IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:

Inspection of the workplace
located at and near:                              Case No. 8:22MJ409

700 R Street
Lincoln, Nebraska 68501

under the control or custody of:

UNITED STATES POSTAL SERVICE

### APPLICATION FOR ADMINISTRATIVE SEARCH WARRANT UNDER THE OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE:

I,  Nicolas P. Senior, Assistant Area Director of the Omaha Area Office, Occupational Safety and Health Administration, United States Department of Labor, hereby apply for an administrative search warrant, pursuant to section 8(a) of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678, 657(a), hereinafter referred to as the OSH Act, for the inspection, investigation, and search of the work place located at 700 R Street, Lincoln, Nebraska 68501, and described as the work place where the United States Postal Service ("USPS") is engaged in mail and parcel delivery.  By virtue of the Postal Employees Safety Enhancement Act, the OSH Act became applicable to the USPS in the same manner as to any other employer.  Pub. L. No. 105-241, 112 Stat. 1572-1573 (1998); see also 29 U.S.C. § 652(5).

1.      This workplace is the place of occupation of employees who are employed by USPS.

2.      The authority for issuance of the administrative search warrant is section 8(a) of the OSH Act and Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816 (1978).

3.      Sections 8(a)(1) and 8(a)(2) of the OSH Act specifically authorize the Secretary of Labor to make inspections and investigations of any factory, plant, establishment, construction site, or other area, workplace, or environment where work is performed by an employee of an employer.  Sections 8(a)(1) and 8(a)(2) are implemented in part by Chapter 9 of the Field Operations Manual (FOM), CPL 02-00-164 (hereinafter "CPL 02-00-164"), attached hereto as Exhibit A and incorporated herein.

4.      Paragraph I.A.1.a of CPL 02-00-164 defines a formal complaint as written and signed notice from a current employee that there exists in the workplace an imminent danger, a violation of the OSH Act, or a violation of an OSHA standard, which exposes employees to a potential physical or health harm.  Ex. A, CPL 02-00-164, para. I.A.1.a. Following receipt of such notice, an inspection is warranted if at least one of the listed criteria is met.  Ex. A, CPL 02-00-164, para I.C.  In this case, an inspection is warranted on two criteria.  First, two employee complaints were submitted, which provide reasonable grounds to believe there exists violations of the OSH Act that expose employees to physical harm.  Ex. A, CPL 02-00-164, para. I.C.1.  Second, one of the complaint's information concerns an establishment and an alleged hazard covered by a local, regional, or national emphasis program.  Ex. A, CPL 02-00-164, para I.C.4.

5.      The warrant sought hereby is based upon the following facts and circumstances:  On July 6, 2022, OSHA received two messages via OSHA's electronic complaint system from a USPS employee who worked at the station at issue. The complainant identified themself as a current employee and checked the signature box indicating these were formal signed complaints.  The first complaint stated: "Air quality in building needs to be tested as a result of asbestos."  The second complaint also alleged possible air contamination from asbestos, in addition to complaints regarding heat and restroom use.  Specifically, the second complaint stated the "station manager told

2

carrier(s) using restroom and re-filling water counted as their 10-minute break for the day. Manager not following heat safety breaks." The location of the hazards were the workroom floor and routes on which carriers delivered mail. See Exhibit B, Complaints.[1]

6.     According to historic weather data from Weather Underground, high temperatures in Lincoln, NE, in the days leading up to July 5, 2022 (the date of the complaint) were regularly in the upper eighties to upper nineties; the day of the complaint, temperatures reached 99 degrees. Similar temperatures in the nineties are forecasted for the next two weeks in Lincoln, NE. See Exhibit C, Weather Data.

7.     Additionally, an inspection is warranted when the complaint information concerns an establishment and an alleged hazard covered by a local, regional, or national emphasis program. Ex. A, CPL 02-00-164, para. I.C.4. USPS is an establishment covered by the National Emphasis Program – Outdoor and Indoor Heat-Related Hazards, CLP 03-00-024 (hereinafter "CPL 03-00-024"), attached hereto as Exhibit D and incorporated herein. USPS is specifically listed in the National Emphasis Program as an industry "likely to have heat-related hazards" and is therefore covered by CPL 03-00-024. Ex. D at A-3. Per CLP 03-00-024: "Allegations of potential worker exposures to heat (e.g., insufficient controls in place such as access to water, rest, and/or shade), or involving workers suspected or confirmed of a heat-related illness, shall be given priority for on-site inspections." Ex. D, CPL 03-00-024, para XII.C.2.b, pp 10-11.

8.     Because of the continued potential for serious injury from summer heat and the serious long term respiratory illness associated with possible asbestos exposure, the referral was treated as a high gravity serious referral and scheduled for inspection in accordance with Ex. A, CPL 02-00-164, Chap. 9, para. I.H.3.

9.     On June 22, 2022, Safety and Health Compliance Officer ("CSHO") Haoming Jiang requested entry into the workplace at 700 R Street, Lincoln, Nebraska, to

---

[1] Said complaints have been purged of matters which might reveal the employee's identity as he or she has requested pursuant to section 8(f)(1) of the OSH Act, 29 U.S.C. § 657(f)(1).

make an inspection of the circumstances surrounding the employee complaints. The local management called Ms. Deborah Levine, attorney for USPS. Ms. Levine stated the inspection would disrupt operations and denied CSHO Jiang the ability to conduct the inspection.

10.     It is requested that the warrant authorize the inspection and investigation of the conditions set forth above in paragraph 5, including information alleged in the complaint, and continuing heat-related hazards, per Ex. D, CPL 03-00-024, para. XII.D.2. Further, the CSHO may expand the inspection beyond heat-related hazards if other hazards or violations are observed during the walk-around or are documented in the OSHA 300 logs.

The inspection and investigation shall include review of all relevant records, files, and papers, and will be conducted during regular working hours or at other reasonable times, within reasonable limits, and in a reasonable manner, including the questioning privately of any employee or agent, and the taking of photographs, videotapes, environmental samples (including the use of personal sampling equipment), and measurements, including temperature measurements when necessary. The CSHO's credentials will be presented, and the inspection and investigation will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness.

11.     Any information, including videotapes, photographs and environmental samples, obtained in connection with the inspection and that is designated to be a trade secret, as defined in 18 U.S.C. § 1905, shall be considered confidential as provided in section 15 of the OSH Act, 29 U.S.C. § 664.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Nicolas P. Senior
Assistant Area Director
Occupational Safety and Health Administration
United States Department of Labor

Subscribed and sworn to before me by telephone or other reliable electronic means on this ___20th___ day of ___July___, 2022.

_____
MICHAEL D. NELSON
United States Magistrate Judge

Steven A. Russell
Acting United States Attorney

_____
Laurie A. Kelly
Assistant U.S. Attorney
MA State Bar # 557575
1620 Dodge Street
Suite 1400
Omaha, Nebraska 68102
Telephone No.  (402) 661-3700
Email:  laurie.kelly@usdoj.gov

OF COUNSEL:

Seema Nanda
Solicitor of Labor

Christine Z. Heri
Regional Solicitor
IL Bar #6204656

Evert H. Van Wijk
Associate Regional Solicitor
PA Bar #44047

Rachel Parsons
MO Bar #36906
KSD #13991
Senior Trial Attorney

2300 Main Street, Suite 10100
Kansas City, MO 64108
(816) 285-7260
(816) 285-7287 (fax)
parsons.rachel@dol.gov

Attorneys for Martin J. Walsh
Secretary of Labor
United States Department of Labor

# Chapter 9

## COMPLAINT AND REFERRAL PROCESSING

I. **Safety and Health Complaints and Referrals**.

  A. **Definitions**.

    1. **Complaint**.

    Notice of an alleged safety or health hazard (over which OSHA has jurisdiction), or a violation of the Act. There are two types; formal and non-formal.

      a. **Formal Complaint**.

      Complaint made by a current employee or a representative of employees that meets all the following requirements:

        ▪ Asserts that an imminent danger, a violation of the Act, or a violation of an OSHA standard exposes employees to a potential physical or health harm in the workplace;

        ▪ Is reduced to writing or submitted on a Complaint (OSHA-7); and

        ▪ Is signed by at least one current employee or employee representative.

      b. **Non-formal Complaint**.

      Any complaint alleging a safety or health violation(s) that does not meet all the requirements of a formal complaint identified above and does not come from one of the sources identified under the definition of Referral, below.

    2. **Inspection**.

    An on-site examination of an employer's worksite conducted by an OSHA compliance officer, initiated as the result of a complaint or referral, and meeting at least one of the criteria identified in Section C, Criteria Warranting an Inspection, below.

    3. **Inquiry**.

    A process conducted in response to a complaint or a referral that does not meet one of the identified inspection criteria as listed in Section C. It does not involve an on-site inspection of the workplace but, rather, the employer is notified of the alleged hazard(s) or violation(s) by telephone, fax, email, or by letter, if necessary. The employer is then requested to provide a response, and OSHA will notify the complainant of that response through appropriate means.

    4. **Electronic Complaint**.

    A complaint submitted through OSHA's public website. All complaints submitted via OSHA's public website are initially considered non-formal.

    See Chapter 9 Section I.E.5, to determine when electronic complaints are to be considered formal.

    5. **Permanently Disabling Injury or Illness**.

    An injury or illness that has resulted in permanent disability, work-related injury, or an illness that is chronic or irreversible. Permanently disabling injuries or illnesses include, but are not limited to: amputation, blindness, a standard threshold shift in hearing, lead or mercury poisoning, paralysis or third-degree burns.

    6. **Referral**.

    An allegation of a potential workplace hazard or violation received from one of the sources listed below:

      a. CSHO referral – information based on the direct observation of a CSHO.

## EXHIBIT A

b. Safety and health agency referral – from sources including, but not limited to: NIOSH, state programs, consultation, and state or local health departments, as well as safety and/or health professionals in other federal agencies.

c. Discrimination or Whistleblower complaint referral – made by a whistleblower investigator when an employee alleges that he or she was retaliated against for complaining about safety or health conditions in the workplace, refusing to do an allegedly imminently dangerous task, engaging in other activities related to occupational safety or health or for raising concerns under any of the federal anti-retaliation statues that OSHA enforces. See the Whistleblower Statutes Desk Aid for more information.

d. Other government agency referral – made by other federal, state, or local government agencies or their employees, including local police and fire departments.

e. Media report – either news items reported in the media or information reported directly to OSHA by a media source.

f. Employer/Employer Representative report – of accidents other than fatalities and catastrophes.

7. **Representative of Employees**.

Any of the following:

a. An authorized representative of the employee bargaining unit, such as a certified or recognized labor organization.

b. An attorney acting for an employee.

c. Any other person acting in a bona fide representative capacity, including, but not limited to, members of the clergy, social workers, spouses and other family members, and government officials or nonprofit groups and organizations acting upon specific complaints and injuries from individuals who are employees.

NOTE: The representative capacity of the person filing complaints on behalf of another should be ascertained unless it is already clear. In general, the affected employee should have requested, or at least approved, the filing of the complaint on his or her behalf.

B. **Classifying as a Complaint or a Referral**.

Whether the information received is classified as a complaint or a referral, an inspection of a workplace is normally warranted if at least one of the conditions in Section C, Criteria Warranting an Inspection, is met.

C. **Criteria Warranting an Inspection**.

An inspection is normally warranted if at least one of the conditions below is met (but see also Section I.D, of this chapter, Scheduling an Inspection of an Employer in an Exempt Industry):

1. A valid formal complaint is submitted. Specifically, the complaint must be reduced to writing or submitted on a Complaint (OSHA-7 or OSHA Online Complaint Form), be signed by a current employee or representative of employees, and state the reason for the inspection request with reasonable particularity. Additionally, there must be reasonable grounds to believe either that a violation of the Act or OSHA standard that exposes employees to physical harm exists, or that an imminent danger of death or serious injury exists, as provided in Section 8(f)(1) of the Act.

2. The information received in a signed, written complaint from a current employee or employee representative that alleges a recordkeeping deficiency that indicates the existence of a potentially serious safety or health violation.

3. The information alleges that an imminent danger situation, a violation of the Act or of an OSHA standard exists, that exposes employees to a potential serious physical or health hazard in the workplace.

4. The information concerns an establishment and an alleged hazard covered by a local, regional, or national emphasis program (such as the Site-Specific Targeting Plan).

5. The employer fails to provide an adequate response to an inquiry, or the individual who provided the original information provides further evidence that the employer's response is false or does not adequately address the hazard(s). The evidence must be descriptive of current or recurring hazardous conditions.

6. The establishment that is the subject of the information has a history of egregious, willful, failure-to-abate, or repeated citations within the Area Office's jurisdiction during the past five years, or is an establishment or related establishment in the Severe Violator Enforcement Program. However, if the employer has previously submitted adequate documentation for these violations, demonstrating that they were corrected and that programs have been implemented to prevent a recurrence of hazards, then the Area Director will normally determine that an inspection is not necessary.

7. The Whistleblower Protection Program requests that an inspection be conducted in response to an employee's allegation that the employee was discriminated against for complaining about safety or health conditions in the workplace, refusing to perform an allegedly dangerous job or task, or engaging in other activities related to occupational safety or health.

8. If an inspection is scheduled or has begun at an establishment and a complaint or referral that would normally be handled through inquiry is received, then this complaint or referral can, at the Area Director's discretion, be incorporated into the scheduled or ongoing inspection. If such a complaint is formal, then the complainant must receive a written response that addresses the complaint items.

9. If the information gives reasonable grounds to believe that an employee under 18 years of age is exposed to a serious violation of a safety or health standard or a serious hazard, then an on-site inspection will be initiated if the information relates to construction, manufacturing, maritime, agriculture, or other industries as determined by the Area Director. Limitations placed on OSHA's activities in agriculture by Appropriations Act provisions will be observed. See CPL 02-00-051, Enforcement Exemptions and Limitations under the Appropriations Act, May 28, 1998. A referral to Wage and Hour should also be initiated.
NOTE: The information does not need to allege that a child labor law has been violated.

D. **Scheduling an Inspection of an Employer in an Exempt Industry**.
In order to schedule an inspection of an employer in an exempt industry classification as specified by Appropriations Act provisions (See CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, May 28, 1998), one of the following conditions must be met:

1. The information must come directly from a current employee; OR

2. It must be determined and documented in the case file that the information came from a representative of the employee (see Section I.A.7 of this chapter, Representative of Employees), with the employee's knowledge of the representative's intended action.

E. **Electronic Complaints Received through the OSHA Public Website**.

1. Electronic complaints submitted through the OSHA public website are automatically forwarded by email to a designated Area Office in the appropriate state. That office then forwards the electronic complaints to the appropriate Area Office in the state.

2. Each Area Office manages a "Complaints" mailbox and processes electronic complaints according to internal complaint processing procedures. The complaints mailbox is monitored daily and every incoming complaint is reviewed for jurisdiction.

   a. If the complaint falls within the jurisdiction of the Area Office, then the complaint is entered into OIS and processed as usual. b. If the complaint falls within the jurisdiction of another Area

Office, the complaint is forwarded appropriately.

3. Area Offices will coordinate with State Plan states to establish procedures to process electronic complaints. The state establishes its own internal procedures for responding to such complaints. These procedures can be the state's usual procedures for handling unsigned complaints or they can include some further coordination with the complainant prior to action. In State Plan states, the Federal Monitoring Office will screen the complaints unless there is another arrangement. If the complaint falls within the individual State Plan's jurisdiction, then the Screening Office will follow the procedures developed with the State Plan for processing the complaint.

4. Complete a Complaint (OSHA-7) for all complaint information received. In order to facilitate the tracking of electronic complaints, please enter the electronic complaint number in the Receipt/Activity Info tab when applicable.

5. Electronic complaints where a current employee has provided their name and checked the "This constitutes my electronic signature" box shall be considered as a formal complaint and processed accordingly.

6. All complaint-related material received electronically should be printed and date-stamped with the date indicating when the material was submitted and received. When these dates are not the same, the Area Director will determine the appropriate date for the incoming material.

F. **Information Received by Telephone**.

1. While speaking with the caller, OSHA personnel will attempt to obtain the following information:
   a. Whether the caller is a current employee or an employee representative.
   b. The exact nature of the alleged hazard(s) and the basis of the caller's knowledge. The individual receiving the information must determine, to the extent possible, whether the information received describes an apparent violation of OSHA standards or the OSH Act.
   c. The employer's name, address, email address, telephone and fax numbers, as well as the name of a contact person at the worksite.
   d. The name, address, telephone number, and email address of any union and/or employee representative at the worksite.

2. As appropriate, OSHA will provide the caller with the following information:
   a. Describe the complaint process, and if appropriate, the concepts of "inquiry" and "inspection," as well as the relative advantages of each.
   b. If the caller is a current employee or a representative of employees, explain the distinction between a formal complaint and a non-formal complaint, and the rights and protections that accompany filing a formal complaint. These rights and protections include: . The right to request an on-site inspection.
      ▪ Notification in writing if an inspection is deemed unnecessary because there are no reasonable grounds to believe that a violation or danger exists.
      ▪ The right to obtain review of a decision not to inspect by submitting a request for review in writing.

3. Information received by telephone from a current employee is considered a non-formal complaint until that individual provides a signed copy of the information. The employee can mail, email, or fax a signed copy of the information, request that a Complaint (OSHA-7) be sent, or sign the information in person at the Area Office. Normally a complainant has five working days to formalize an electronic complaint.

4. If appropriate, inform the complainant of rights to confidentiality in accordance with Section 8(f)(1) of the Act for private sector employees, and Executive Order 12196 for federal employees, and ask whether the complainant wishes to exercise this right. When confidentiality is requested, the identity of the complainant is protected regardless of the formality of the complaint.

5. Explain Section 11(c) rights to private sector employees and employees of the U.S. Postal Service, or reprisal and discrimination protection provided by Executive Order 12196, §1960.46 and the Whistleblowers Protection Act of 1989 to federal employees. See Chapter 13, Section III.E for reports of reprisal or discrimination from federal employees.

G. **Procedures for Handling Complaints Filed in Multiple Area Offices or Regions**.

1. When a Regional Office determines that multiple offices within the Region have received the same complaint or, if the Regional Office suspects that the same complaint has been filed in multiple Regions, the Regional Office should contact the Director or Deputy Director of the Directorate of Enforcement Programs (DEP).

2. DEP will query all 10 Regions and coordinate with the Directorate of Cooperative and State Programs to query the State Plan states to determine whether similar complaints were filed in multiple offices.

   a. If multiple Regions have received the same complaint, then the National Office will address the complaint with the employer.

   b. Area Offices should indicate in OIS that these complaints have been transferred to the National Office.

H. **Procedures for an Inspection**.

1. Upon receipt of a complaint or referral, the Area Director or designee will evaluate all available information to determine whether there are reasonable grounds to believe that a violation or hazard exists.

   a. If necessary, reasonable attempts will be made to contact the individual who provided the information in order to obtain additional details or to clarify issues raised in the complaint or referral. See the Complaint Questionnaire beginning on page 9-13.

   b. The Area Director can determine not to inspect a facility if he/she has a substantial reason to believe that the condition in the complaint is being or has been abated.

2. Despite the existence of a complaint, if the Area Director determines that there are no reasonable grounds to believe that a violation or hazard exists, then no inspection or inquiry will be conducted.

   a. Where a formal complaint has been submitted, the complainant will be notified in writing of OSHA's intent not to conduct an inspection, the reasoning behind the determination, and the right to have the determination reviewed under §1903.12. The justification for not inspecting will be noted in the case file.

   b. In the event of a non-formal complaint or referral, if possible, the individual providing the information will be notified by appropriate means of OSHA's intent not to conduct an inquiry or inspection. The justification for not inspecting or conducting an inquiry will be noted in the case file.

3. If the information contained in the complaint or referral meets at least one of the inspection criteria listed in Section I.C of this chapter, Criteria Warranting an Inspection, and there are reasonable grounds to believe that a violation or hazard exists, the Area Office is authorized to conduct an inspection.

   a. If appropriate, then the Area Office will inform the individual who has provided the information that an inspection will be scheduled and that he or she will be advised of the results.

   b. After the inspection, the Area Office will send the complainant a letter addressing each information item, with reference to the citation(s) or a sufficiently detailed explanation for why a citation was not issued.

4. If an inspection is warranted, it will be initiated as soon as resources permit. Inspections resulting from formal complaints of serious hazards will normally be initiated within five working days of formalizing.

5. As a general rule, the scope of a complaint/referral inspection must bear an appropriate relationship to the alleged violative conditions. The CSHO must have probable cause to expand the inspection beyond the violations alleged in the complaint/referral. See Chapter 3, Section III, Inspection Scope, and Chapter 15, Section III, Obtaining Warrants, for more information.

I. **Procedures for an Inquiry**.

1. If the complaint or referral does not meet the criteria for initiating an onsite inspection, then an inquiry will be conducted. OSHA will promptly notify the employer about the complaint or referral and its allegation(s), and fax or email a confirming letter.

2. If a non-formal complaint is submitted by a current employee or a representative of employees that does not meet any of the inspection criteria, then the complainant can be given five working days to make the complaint formal.

   a. The complainant can come into the Area Office and sign the complaint, or mail, email, or fax a signed complaint letter to OSHA. A Complaint (OSHA-7) can also be mailed or faxed to the complainant, if appropriate.

   b. If the complaint is not made formal after five working days, after making a reasonable attempt to inform the complainant of the decision, OSHA will proceed with the inquiry process.

3. The employer will be advised of what information is needed to answer the inquiry and encouraged to respond by fax or email. See Chapter 13, Federal Agency Field Activities, for differing federal agency procedures. Employers are encouraged to do the following:

   a. Immediately investigate and determine whether the complaint or referral information is valid and make any necessary corrections or modifications.

   b. Advise the Area Director either in writing by email or fax within five working days of the results of the investigation into the alleged complaint or referral information. At the discretion of the Area Director and depending on the circumstances, the response time can be longer or shorter than five working days. Also, although the employer is requested to respond within the above time frame, the employer may not be able to complete abatement action during the above timeframe, the employer should be encouraged to do so.

   c. Provide the Area Director with supporting documentation of the findings, including any applicable measurements or monitoring results, and photographs and/or videos that the employer believes would be helpful, as well as a description of any corrective action that the employer has taken or is in the process of taking.

   d. Post a copy of the letter from OSHA where it is readily accessible for review by all employees.

   e. Return a copy of the signed Certificate of Posting to the Area Office.

   f. If there is a recognized employee union or safety and health committee in the facility, provide them with a copy of OSHA's letter and the employer's response.

4. As soon as possible after contacting the employer, a notification letter will be faxed to the employer, or mailed where no fax is available. Sample letters to complainants and employers are provided in OIS. Note that some of these letters are for private sector use and some are for federal agency use. If email is an acceptable means of responding, then this should be indicated in the notification letter and the proper email address should be provided.

5. If no employer response or an inadequate employer response is received after the allotted five working days, additional contact with the employer can be made before an inspection is scheduled. If the employer provides no response or an inadequate response, or if OSHA determines from other information that the condition has not been or is not being corrected, then an inspection will be scheduled.

6. The complainant will be advised of the employer's response, as well as the complainant's rights to dispute that response and, if the alleged hazard persists, of the right to request an inspection. When

OSHA receives an adequate response from the employer and the complainant does not dispute or object to the response, an onsite inspection normally will not be conducted.

7. If the complainant is a current employee or a representative of employees and wishes to dispute the employer's response, the disagreement must be submitted in writing and signed, thereby making the complaint formal.

   a. If the employee disagreement takes the form of a written and signed formal complaint, then see Section I.H of this chapter, Procedures for an Inspection.

   b. If the employee disagreement does not take the form of a written and signed formal complaint, then some discretion is allowed in situations where the information does not justify an on-site inspection. In such situations, the complainant will be notified of OSHA's intent not to conduct an inspection and the reasoning behind the determination. This decision should be thoroughly documented in the case file.

8. If a signed complaint is received after the complaint inquiry process has begun, then the Area Director will determine whether the alleged hazard is likely to exist based on the employer's response and by contacting the complainant. The complainant will be informed that the inquiry has begun and that the complainant retains the right to request an on-site inspection if he/she disputes the results and believes that the hazard still exists.

9. The complaint must not be closed until OSHA verifies that the hazard has been abated.

10. The justification for not conducting an inquiry will be noted in the case file.

J. **Complainant Protection**.

   1. **Identity of the Complainant**.

      a. Upon request of the complainant, his or her identity will be withheld from the employer in accordance with Section 8(f)(1) of the Act. No information will be given to the employer that would allow the employer to identify the complainant.

      b. Generally, names and other personally identifiable information of employees will not be included in the warrant application. Where employees' names or other personally identifiable information appear in affidavits and other supporting documents attached to the warrant application, such information must be redacted. Where inclusion of the employee's name is necessary, Area Offices should consult with RSOL about filing the warrant application under seal.

   2. **Whistleblower Protection**.

      a. Section 11(c) of the Act provides protection for employees who believe that they have been the subject of an adverse employment action in retaliation for engaging in activities related to workplace safety or health. Any employee who believes that he or she has been discharged or otherwise retaliated against by any person as a result of engaging in such activities can file a whistleblower complaint. The complaint must be filed within thirty (30) days of the discharge or other retaliation.

      b. Complainants should always be advised of their Section 11(c) rights and protections upon initial contact with OSHA and whenever appropriate in subsequent communications.

   3. **Recording in OIS**.

      Information about complaint and referral inspections or inquiries must be recorded in OIS following the current instructions outlined in the FOM. Referrals reported by the employer will be recorded in OIS following the guidance provided in the Memorandum entitled, *Revised Interim Enforcement Procedures for Reporting Requirements under 29 C.F.R. 1904.39*, dated March 4, 2016, or unless superseded by future Agency-approved correspondence.

II. **Whistleblower Complaints**.

A. OSHA enforces the whistleblower or anti-retaliation provisions of the OSH Act and 21 other other federal statutes. These anti-retaliation statutes protect employees who report violations of various

workplace safety and health, airline, commercial motor carrier, consumer product, environmental, financial reform, food safety, health insurance reform, motor vehicle safety, nuclear, pipeline, public transportation agency, railroad, maritime, and securities laws. The statutes generally prohibit employers from discharging or otherwise retaliating against their employees for exercising their rights under these statutes. In particular, under Section 11(c) of the OSH Act, these rights include filing an OSHA complaint, participating in an inspection or talking to an inspector, seeking access to employer exposure and injury records, reporting an injury, and raising a safety or health complaint with the employer. A desk reference summarizing these statutes can be found at www.whistleblowers.gov.

B. When a whistleblower complaint is made under any of the federal whistleblower statutes enforced by OSHA other than the OSH Act, the complainant should be referred promptly to the Assistant Regional Administrator for Whistleblower Protection Programs because the requirements for filing complaints under those statutes can vary from those of the OSH Act. They should also be advised that there are statutory deadlines for filing these complaints.

C. In the context of an OSHA enforcement action or a consultation activity, the complainant will be advised of the protection against retaliation afforded by Section 11(c) of the Act. A Section 11(c) complaint can be in any form, including an oral complaint made to a CSHO. Thus, if a person alleges that he or she has suffered an adverse action because of activity protected under Section 11(c), CSHOs will record that person's identifying information and the date and time of this initial contact on an OSHA-87 form and forward it to the Assistant Regional Administrator for Whistleblower Protection Programs for processing.

D. In State Plan states, employees can file occupational safety and health retaliation complaints with Federal OSHA, the state, or both. Federal OSHA normally refers such complaints to the State Plan states for investigation. OSHA's Whistleblower Manual outlines the Agency's referral/deferral policies for such complaints.

III. **Decision Trees**.

A. See tree on page 9-12 for OSHA enforcement action or consultation activity when information is obtained in writing.

B. See tree on page 9-14 for OSHA enforcement action or consultation activity when information is obtained orally.

**From:** Complaint@dol.gov
**To:** OSHA - Complaints - OMAHA (F164)
**Subject:** 43454112 EMPLOYEE COMPLAINT
**Date:** Tuesday, July 5, 2022 1:46:53 PM



within 5 working days of 05-JUL-22.

Below is the complaint information
=======================================================

-------------------------------------------------------------------

NEBRASKA

Omaha Area Office
444 Regency Parkway Drive, Suite 303
Omaha, Nebraska 68114
(402) 553-0171
(402) 551-1288 FAX
(800) 642-8963 Toll Free - Nebraska Only

-------------------------------------------------------------------

Establishment Name:         United States Postal Service
Site Street:                700 R St
Site City:                  Lincoln
Site State:                 Nebraska
Site Zip:                   68501

Management Official:        Kerry Kowalski
Telephone Number:           4024731602
Type of Business:           Postal

Hazard Description:
-------------------------------------------------------------------
1.Possible air contamination from asbestos. Roughly 80 to 100 employees at facility at a time.
2. Heat and restroom use, station manager told carrier using restroom and refilling water counted as their 10 minute vreak for the day. Manager not following heat safety breaks.
-------------------------------------------------------------------

Hazard Location:

EXHIBIT B

----------------------------------------------------------------
1. Workroom floor.
2. Carriers out on the street.
----------------------------------------------------------------

This condition has previously been brought to the attention of:
* The employer

I am a current employee.



Complainant Telephone Number:

Complainant Mailing Address
------------------------------------

| | |
|---|---|
| **From:** | Complaint@dol.gov |
| **To:** | OSHA - Complaints - OMAHA (F164) |
| **Subject:** | 43452432 EMPLOYEE COMPLAINT |
| **Date:** | Tuesday, July 5, 2022 9:31:32 AM |

████████████

Mailing Address
-------------------------------------
██████████
██████████
██████████

Email: ████████████

within 5 working days of 05-JUL-22.

Below is the complaint information
═══════════════════════════════════════════

--------------------------------------------------------------------

NEBRASKA

Omaha Area Office
444 Regency Parkway Drive, Suite 303
Omaha, Nebraska 68114
(402) 553-0171
(402) 551-1288 FAX
(800) 642-8963 Toll Free - Nebraska Only

--------------------------------------------------------------------

Establishment Name:        United States Postal Service
Site Street:               700 R St
Site City:                 Lincoln
Site State:                Nebraska
Site Zip:                  68501

Management Official:       Kerry Kowalski
Telephone Number:          4024731602
Type of Business:          Postal

Hazard Description:
--------------------------------------------------------------------
Air quality in building needs to be tested as a result of asbestos.
--------------------------------------------------------------------

Hazard Location:
--------------------------------------------------------------------
Entire building.

--------------------------------------------------------------------

This condition has previously been brought to the attention of:
* The employer

I am a current employee.



Complainant Telephone Number:

Complainant Mailing Address

**40.84** °N, **96.79** °W

# Lincoln, NE Weather Calendar ★ 🏠

☀️ **85° LINCOLN AIRPORT STATION (/DASHBOARD/PWS/KNELINCO264?
CM_VEN=LOCALWX_PWSDASH)** | CHANGE ⌄

CALENDAR (/CALENDAR/US/NE/LINCOLN/KLNK)

- TODAY (/WEATHER/US/NE/LINCOLN/KLNK)
- HOURLY (/HOURLY/US/NE/LINCOLN/KLNK)
- 10-DAY (/FORECAST/US/NE/LINCOLN/KLNK)
- CALENDAR (/CALENDAR/US/NE/LINCOLN/KLNK)
- HISTORY (/HISTORY/DAILY/US/NE/LINCOLN/KLNK)
- WUNDERMAP (/WUNDERMAP?LAT=40.844&LON=-96.79)

| July | | 2022 | | | | View |
|------|------|------|------|------|------|------|

| SUN | MON | TUE | WED | THU | FRI | SAT |
|-----|-----|-----|-----|-----|-----|-----|
| 26 Mostly Sunny 82° 55° 0.02 in | 27 Mostly Sunny 82° 51° 0 in | 28 Mostly Sunny 89° 56° 0 in | 29 Mostly Sunny 94° 67° 0 in | 30 Mostly Sunny 94° 72° 0 in | 1 Mostly Sunny 82° 67° 0 in | 2 Mostly Cloudy 83° 63° 0.01 in |
| 3 Cloudy 87° 67° 0.03 in | 4 Mostly Sunny 98° 75° 0.08 in | 5 Mostly Sunny 99° 78° 0 in | 6 Mostly Cloudy 86° 72° 0.32 in | 7 Cloudy 83° 72° 0.03 in | 8 Cloudy 86° 72° 1.76 in | 9 Mostly Sunny 87° 67° 0 in |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |

EXHIBIT C

| | | | | | | |
|---|---|---|---|---|---|---|
| Mostly Sunny 93° 70° 0 in | Mostly Sunny 87° 66° 0 in | Mostly Sunny 86° 63° 0 in | Mostly Sunny 92° 68° 0 in | Sunny 94° 73° 0 in | Mostly Sunny 98° 72° 0 in | Partly Cloudy 92° 70° 0 in |
| **17** Partly Cloudy 93° 71° 0 in | **18** Sunny 97° 75° 0 in | **19** Partly Cloudy 99° 76° 0 in | **20** Mostly Sunny 98° 75° 0 in | **21** Mostly Sunny 99° 75° 0 in | **22** Partly Cloudy 96° 74° 0 in | **23** Partly Cloudy 98° 74° 0 in |
| **24** Partly Cloudy 99° 74° 0 in | **25** Partly Cloudy 99° 73° 0 in | **26** Partly Cloudy 97° 71° 0 in | **27** 88° 66° 0 in | **28** 88° 66° 0 in | **29** 88° 66° 0 in | **30** 88° 66° 0 in |
| **31** 87° 66° 0 in | **1** 87° 66° 0 in | **2** 87° 66° 0 in | **3** 87° 66° 0 in | **4** 87° 66° 0 in | **5** 87° 65° 0 in | **6** 87° 65° 0 in |

# OSHA INSTRUCTION

**U.S. DEPARTMENT OF LABOR**          **Occupational Safety and Health Administration**

| | |
|---|---|
| **DIRECTIVE NUMBER:** CPL 03-00-024 | **EFFECTIVE DATE:** April 8, 2022 |
| **SUBJECT:** National Emphasis Program – Outdoor and Indoor Heat-Related Hazards | |

## ABSTRACT

**Purpose:**  This Instruction describes policies and procedures for implementing a National Emphasis Program (NEP) to protect employees from heat-related hazards and resulting injuries and illnesses in outdoor and indoor workplaces.  This NEP expands on the agency's ongoing heat-related illness prevention initiative and campaign by setting forth a targeted enforcement component and reiterating its compliance assistance and outreach efforts.  This approach is intended to encourage early interventions by employers to prevent illnesses and deaths among workers during high heat conditions, such as working outdoors in a local area experiencing a heat wave, as announced by the National Weather Service. Early interventions include, but are not limited to, implementing water, rest, shade, training, and acclimatization procedures for new or returning employees.

**Scope:**  This Instruction applies OSHA-wide.

**References:**  Section 5(a)(1) of the Occupational Safety and Health Act (OSH Act), 29 U.S.C. § 654.

OSHA Instruction, CPL 02-00-164, *Field Operations Manual (FOM)*, April 14, 2020.

(*See* Section III for additional references.)

**Cancellations:**  None.

**State Plan Impact:**  Notice of Intent Required, Adoption Encouraged. Federal Program Change, Notice of Intent Required, Equivalency Required.  *See* Section VI.

**Action Offices:**  OSHA Regional and Area Offices, State Plan and OSHA On-Site Consultation programs

**Originating Office:**  Directorate of Enforcement Programs, Office of Health Enforcement

**Contact:**          Directorate of Enforcement Programs
                      Office of Health Enforcement
                      200 Constitution Avenue, NW, Room N3119
                      Washington, DC 20210

By and Under the Authority of


DOUGLAS L. PARKER
Assistant Secretary

## Executive Summary

This Instruction describes policies and procedures for implementing a National Emphasis Program (NEP) to identify and eliminate or reduce worker exposures to occupational heat-related illnesses and injuries in general industry, construction, maritime, and agriculture.  It targets specific industries expected to have the highest exposures to heat-related hazards and resulting illnesses and deaths.

## Significant Changes

This is a new Instruction.

**Table of Contents**

## Contents

I.     Purpose. ..................................................................................................................1

I.     Scope. ....................................................................................................................1

III.   References. ...........................................................................................................1

IV.    Cancellations. .......................................................................................................2

V.     Action Offices. .....................................................................................................2

A.     Responsible Office. ..............................................................................................2

VII.   Expiration. ...........................................................................................................3

VIII.  Significant Changes. .............................................................................................3

IX.    On-Site Consultation Programs. ............................................................................3

X.     Background. ..........................................................................................................3

XI.    NEP Goal. .............................................................................................................6

XII.   Program Procedures. .............................................................................................6

       A.     General. ......................................................................................................... 6

       B.     Site Selection. ............................................................................................... 7

       C.     Inspection Scheduling. ................................................................................. 9

       D.     Inspection Procedures. ............................................................................... 13

       E.     CSHO Protection. ....................................................................................... 19

       F.     OSHA Information System (OIS) Coding Instructions. ............................... 20

       G.     Outreach. .................................................................................................... 21

       H.     Coordination. .............................................................................................. 23

       I.     Program Review. .......................................................................................... 23

Appendix A:  Target Industries for the Heat NEP
Appendix B:  CSHO Pre-inspection Checklist
Appendix C:  Sample Heat AVD
Appendix D:  Sample Heat Hazard Alert Letter
Appendix E:  Sample Employer Letter to Corporate Offices for Heat-Related Hazards
Appendix F:  Description of serious illnesses and common symptoms
Appendix G:  Warnings, Alerts, and Advisories Issued by the U.S. National Oceanic and
             Atmospheric Administration (NOAA), National Weather Service (NWS)
Appendix H:  Additional Resources

i

I.     Purpose.

This Instruction describes policies and procedures for implementing a National Emphasis Program (NEP) to ensure that employees in high-hazard industries are protected from heat-related hazards, both indoors and outdoors, that may lead to serious illnesses, injuries, or death (*see* Appendix F for a list of heat illnesses).  This NEP augments OSHA's efforts addressing unprogrammed-related activities, *e.g.*, complaints, referrals, and severe incident reports, by adding an enforcement program targeting specific high-hazard industries or activities in workplaces where this hazard is prevalent during high heat conditions, such as working outdoors in a local area experiencing a heat wave, as announced by the National Weather Service, or working indoors near radiant heat sources, such as iron and steel mills and foundries  In addition, this NEP focuses on vulnerable workers in outdoor and indoor environments by coordinating efforts with the Department of Labor Wage and Hour Division (WHD).  More information on this effort is in Section XII.A, Program Procedures.

II.    Scope.

This Instruction applies OSHA-wide.

III.   References.

A.     Executive Order (EO) 14008, January 27, 2021.Executive Order (EO) 14008, Tackling the Climate Crisis at Home and Abroad.

B.     U.S. Department of Labor *Climate Action Plan*, September 2021, pgs. 6-7.

C.     OSHA Memorandum, *Inspection Guidance for Heat-Related Hazards*, September 1, 2021.

*[Note, this memorandum, which began OSHA's enforcement Heat Initiative, is being incorporated into this OSHA Instruction, and the memorandum will be archived upon the effective date of this NEP.]*

D.     Section 5(a)(1) of the Occupational Safety and Health Act (OSH Act), 29 U.S.C. § 654.

E.     OSHA Instruction, ADM 03-00-003, *OSHA Directives System*, December 11, 2000.

F.     OSHA Instruction, ADM 03-01-005, *OSHA Compliance Records*, August 3, 1998.

G.     OSHA Instruction, ADM 04-00-003, *OSHA Safety and Health Management System*, May 6, 2020.

H.     OSHA Instruction, CPL 02-00-025, *Scheduling System for Programmed Inspections*, January 4, 1995.

I.     OSHA Instruction, CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, May 28, 1998 (including annually updated Appendix A).

J.     OSHA Instruction, CPL 02-00-164, *Field Operations Manual (FOM)*, April 14, 2020.

1

K.    OSHA Instruction, CPL 02-01-062, *Site-Specific Targeting (SST)*, December 14, 2020.

L.    OSHA Memorandum, *Establishment-Targeting Lists for Emphasis Programs*, November 12, 2014.

M.    OSHA Instruction, FAP 01-00-008, *Federal Agency Targeting Inspection Program,* February 11, 2019.

N.    OSHA Instruction, CPL 02-00-155, *Inspection Scheduling for Construction*, September 6, 2013.

O.    OSHA Instruction, CPL 02-03-007, *Whistleblower Investigations Manual*, January 28, 2016.

P.    OSHA Instruction, CPL 02-00-135, *Recordkeeping Policies and Procedures Manual*, December 30, 2004.

Q.    OSHA Instruction, TED 01-00-015, OSHA Technical Manual (OTM), Section III, Chapter 4 – Heat Stress, September 15, 2017 (or latest update).

R.    OSHA-NIOSH Heat Safety Tool (smartphone App):  Heat Safety Tool Application.

S.    OSHA Memorandum of Understanding, Wage and Hour Division (WHD) – Coordination and Information Sharing, August 4, 2021.

T.    NIOSH, *Criteria for a Recommended Standard: Occupational Exposure to Heat and Hot Environments*, DHHS (NIOSH) Publication Number 2016-106, February 2016.

U.    American Conference of Governmental Industrial Hygienists (ACGIH®), Action Limit (AL) for un-acclimatized workers and a Threshold Limit Value (TLV®) for acclimated workers, *see* Heat Stress and Strain: TLV® Physical Agents 2022 (or latest edition).  *See* ACGIH® website, here.

*[Note, TLV® Booklets are available through OSHA's Technical Data Center.]*

V.    U.S. Department of Commerce's National Oceanic and Atmospheric Administration (NOAA), National Weather Service (NWS), Types of warnings, alerts, and advisories.

*See* Appendix H for Additional Resources.

IV.    Cancellations.

None

V.    Action Offices.

A.  Responsible Office.

Directorate of Enforcement Programs, Office of Health Enforcement.

B.  Action Offices.

OSHA Regional and Area Offices, State Plan and OSHA On-Site Consultation Programs.

2

C.   Information Offices.

OSHA National Office.

VI.   Federal Program Change.

Federal Program Change, Notice of Intent Required, Adoption Encouraged.  This Instruction describes a federal program change that establishes an NEP to identify and eliminate or reduce exposures to heat-related hazards, both indoors and outdoors, resulting in illnesses, injuries, and deaths, through inspection targeting, outreach, and compliance assistance.  State Plans are strongly encouraged, but are not required, to adopt this Instruction, and State Plans that adopt this Instruction should implement it in an at least as effective manner.

Within 60 days of the effective date of this Instruction, a State Plan must submit a notice of intent indicating whether they already have a similar policy in place, intend to adopt new policies and procedures, or do not intend to adopt this Instruction. If a State Plan does not adopt at first, but at some later point decides to adopt this Instruction or an at least as effective version of this Instruction, the State Plan must notify OSHA of this change in intent.  Within 60 days of adoption, the State Plan must provide an electronic copy of the policy or a link to where their policies are posted on the State Plan's website. The State Plan must also provide the date of adoption and identify differences, if any, between their policy and OSHA's.  OSHA will provide summary information on the State Plan responses to this instruction on its website, here.

OSHA's Office of Statistical Analysis (OSA) will work with the State Plans to provide the data as requested to develop targeting lists in accordance with the instructions in Section XII.B.  OSHA will make the list(s) of establishments available to the State Plans.  *See* coding instructions for the OSHA Information System (OIS) in Section XII.F.

This Instruction describes a change that may affect federal agencies.  Federal agencies that are subject to inspection and have employees exposed to hazards covered by this emphasis program are also included in this NEP.  *See* FOM Chapter 13, *Federal Agency Field Activities* and OSHA Instruction, FAP 01-00-008, *Federal Agency Targeting Inspection Program,* February 11, 2019.

VII.   Expiration.

This Instruction shall be operative for no more than three years from the effective date, unless canceled or extended by a superseding directive.

VIII.   Significant Changes.

None.

IX.   On-Site Consultation Programs.

On-Site Consultation Programs are encouraged to develop their own strategic approaches for addressing heat-related illness and injuries resulting from body heat generated by physical work that is performed in conditions of high ambient and/or radiant heat, especially when combined with humidity and inadequate cooling.  *See* coding instructions for the OIS in Section XII.F.

X.   Background.

3

The U.S. Department of Labor's Bureau of Labor Statistics (BLS) reports that between 2015 and 2019, environmental heat cases resulted in an average of 35 fatalities per year and an average of 2,700 cases with days away from work.  However, the total number of heat-related fatalities may be underreported and improperly diagnosed.  The cause of death is often listed as a heart attack when the actual cause or aggravating cause may have been exposure to a heat-related hazard. Heat-related illnesses range from heat cramps to heat stroke, which can potentially lead to death.  *See* Appendix F for a list of heat illnesses.  Between 2015 and 2020, Federal OSHA conducted approximately 200 heat-related hazard inspections each year, which included approximately 15 heat-related fatality inspections annually.

This NEP is part of a broader Department of Labor response to President Biden's Executive Order (EO) 14008, "Tackling the Climate Crisis at Home and Abroad."  EO 14008 established an interagency effort and commitment to workplace safety, climate resilience, and environmental justice.  In response, the U.S. Department of Labor developed the Climate Action Plan, where the Secretary of Labor established a goal of reducing heat-related illnesses.  In addition, on September 20, 2021, the White House issued a statement encouraging interagency efforts and commitment to workplace safety, climate resilience, and environmental justice that included reducing heat-related illnesses (See White House statement, here).  OSHA's initial enforcement response to the President's order was to issue a heat initiative memorandum on September 1, 2021, instructing the Regional Offices to prioritize heat complaints and referrals and to intervene when they become aware of possible heat hazard conditions.

This Heat NEP incorporates and expands on the September 1, 2021, heat initiative memorandum to further focus on heat-related hazards in both the outdoor and indoor work environments and provides procedures for planned/programmed and follow-up inspections in targeted workplaces.  The NEP prioritizes on-site (in person) response for complaints and for all employer-reported hospitalizations (*i.e.*, severe injury reports) related to heat hazards.  Performance of rapid response investigations are reserved for limited circumstances and subject to Area Director's (AD) approval, as described in Section XII.C.1.

The National Weather Service (NWS) uses a heat index to classify environmental heat into four categories: Caution (80°F – 90°F HI), Extreme Caution (91°F – 103°F HI), Danger (103°F – 124°F HI), and Extreme Danger (126°F or higher HI), issued by the U.S. Department of Commerce's National Oceanic and Atmospheric Administration (NOAA), National Weather Service (NWS).  *See* NWS webpage, here.  When the heat index[1] is 80°F or higher, serious occupational heat-related illnesses and injuries become more frequent, especially in workplaces where unacclimatized workers are performing strenuous work (*e.g.*, intense arm and back/lifting work, carrying, shoveling, manual sawing, pushing and pulling heavy loads, and walking at a fast pace), without easy access to cool water, or cool/shaded areas, when working in direct sunlight or areas where other radiant heat sources are present.

---

[1] According to the National Weather Service, the Heat Index, sometimes referred to as the apparent temperature, is given in degrees Fahrenheit and is a measure of how hot it really feels when relative humidity is factored in with the actual air temperature.

Acclimatization is a process by which a person gradually increases their exposure time to hot environmental conditions, causing beneficial physiological changes by properly regulating body temperature that minimizes heat-related illnesses.  It is therefore essential for employers to train new or returning workers on heat-related hazards including heat stress, gradually increase their workloads, ensure more frequent breaks as they acclimatize to ambient conditions, and monitor them for signs of heat illness.  Heat-related fatalities have occurred with a heat index below 80°F, particularly when aggravating factors are present.

Heat-related fatalities are usually the result of exertional heat stroke, where physical activity in hot environments causes the body temperature to reach 104°F or higher (normal body temperature is around 98.6°F).[1]  Appendix F of this memorandum provides a list of serious heat-related illnesses, along with common signs and symptoms of exposure.

Heat-related illnesses and injuries can happen at almost any ambient temperature, especially in cases where workers perform moderate or higher physical activity, or wear heavy or bulky clothing or equipment, including personal protective equipment.  Heat-related illnesses and injuries also generally occur when body heat generated by physical work is performed in conditions of high ambient heat, especially when combined with humidity and inadequate cooling.  As mentioned above, combinations of heat and humidity are used to determine the commonly used "feels like" temperature (*i.e.*, heat index, or HI).  The OSHA-NIOSH Heat Safety Tool App is a resource for finding the forecasted and current heat index.  The App indicates the hazard levels using the heat index as: Caution less than 80°F HI, Warning 80°F to 94°F HI and danger at 95°F HI or higher.

The National Institute for Occupational Safety and Health (NIOSH) has published recommended occupational exposure limits and controls for heat stress.  A NIOSH publication, *Criteria for a Recommended Standard: Occupational Exposure to Heat and Hot Environments*, outlines recommended environmental limits for physical work at which point engineering controls, preventative work, hygienic practices, and administrative or other control procedures should be implemented in order to reduce the risk of heat-related illnesses.  NIOSH has a Recommended Alert Limit (RAL) and Recommended Exposure Limit (REL) based on the Wet-Bulb-Globe Temperature (WBGT).[2]

For a listing of best practices on worker acclimatization visit the American Conference of Governmental Industrial Hygienists (ACGIH®) Action Limit (AL) for unacclimatized workers and a Threshold Limit Value (TLV®) for acclimatized workers, see Heat Stress and Strain: TLV® Physical Agents 2022 Edition, or latest edition, available at www.acgih.org.

The above alerts, advisories, and criteria can help to identify days in which a maximum heat temperature can result in increased risks of heat-related hazards. These criteria vary across the country.  Particularly in areas of the United States that are not usually subject

---

[2] For resources discussing heat-related illnesses and common symptoms, *see* NIOSH Criteria for a Recommended Standard: Occupational Exposure to Heat and Hot Environments, DHHS (NIOSH) Publication Number 2016-106, February 2016.

to elevated dangerous heat conditions, unacclimatized workers may suffer serious heat-related illnesses even in cases when the heat index is not high enough to trigger NWS heat advisories or warnings.

XI.  **NEP Goal.**

OSHA heat-related inspections have accounted for 0.5 percent of all Federal inspections during the last five years and included both unprogrammed (75 percent) and programmed (25 percent) inspections (e.g., including regional emphasis programmed inspections). The number of unprogrammed activities makes clear the continued need for heat-related outreach and compliance assistance activities, as well as On-Site Consultation visits and programmed enforcement to lower reported fatalities, hospitalizations, and complaints or referrals to OSHA.

The goal of this NEP is to reduce or eliminate worker exposures to heat-related hazards that result in illnesses, injuries, and deaths, by targeting industries and worksites, including worksites with radiant heat sources, where employees are exposed to heat-related hazards and have not been provided adequate protection that includes cool water, rest, cool areas, training, and acclimatization.  These mitigation strategies are key in controlling the health hazards associated with heat exposures.  OSHA's goal will be accomplished by a combination of enforcement (which includes inspection targeting), outreach to employers, and compliance assistance.  Each Region is expected to have a fiscal year goal of increasing their heat inspections by 100% above the baseline of the average of fiscal years 2017 through 2021.

To ensure abatement and to monitor the effectiveness of OSHA's enforcement and guidance efforts, certain follow-up inspections from worksites previously inspected for heat-related hazards will be included as part of the program procedures, as outlined in Section XII.C.2.

XII.  **Program Procedures.**

A.  **General.**

To increase the likelihood of preventing heat-related illnesses and deaths and make efficient use of OSHA resources, compliance safety and health officers (CSHOs) who are investigating for other purposes, shall open or refer a heat-related inspection for any hazardous heat conditions observed, recorded in the OSHA 300 logs or 301 Incident Reports, or where an employee brings a heat-related hazard(s) to the attention of the CSHO (such as, employees or temporary workers being exposed to high temperature conditions without adequate training, acclimatization or access to water, rest, and shade).  Expansion of inspections shall be conducted in accordance with the FOM, Chapter 3, Section III.B, *Partial Inspections*.

Additionally, CSHOs should inquire during inspections regarding the existence of any heat-related hazard prevention programs on heat priority days.  A heat priority day occurs when the heat index for the day is expected to be 80°F or more.  The AO will assess the potential for heat-related serious illnesses and injuries where such hazards may exist in indoor or outdoor work areas on heat priority days and provide compliance assistance where needed.

Furthermore, *programmed inspections shall occur on any day that the NWS has announced a heat warning or advisory for the local area*.  See Appendix G for a description of these types of alerts, for which affected employers should be aware and take appropriate actions to protect their workers from heat hazards.  Appendix A has a list of both outdoor and indoor industries that are known to have heat-related hazard incidents.  During days of locally-issued heat warnings or advisories, establishment lists derived from Appendix A will be used for programmed inspections, *see* Section XII, C.3.

Another source for heat inspections are referrals from the Wage and Hour Division (WHD) of the U.S. Department of Labor.    When the weather is hot or a heat alert is issued for an area where the WHD is investigating, WHD is encouraged to coordinate with OSHA by providing information on heat-related hazards by making timely referrals, per the Memorandum of Understanding between OSHA and WHD, dated August 4, 2021.

OSHA's Appropriations Act has placed exemptions and limitations on enforcement activities for those employers who employ 10 or fewer employees, commonly referred to as small employers.  Small farming operations and small employers in low-hazard industries are most affected by the exemptions and limitations of the Appropriations Act.

Before initiating any health enforcement activities for a farming operation or non-farming with 10 or fewer employers, the CSHO should review CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, and FOM Chapter 2, Section IV.D, for more details.

A farming operation with 10 or fewer employees at all times during the previous 12 months and that has not had an active temporary labor camp during the preceding 12 months is exempt from OSHA enforcement, *e.g.*, programmed health or safety inspections, referrals, or complaints.  CSHOs should be aware that family members of farm employers are not counted when determining the number of employees.

A non-farming employer with 10 or fewer employees listed in Appendix A of CPL 02-00-051 has some enforcement exemptions and limitations under the Appropriations Act (*e.g.*, programmed safety inspections are not permitted), but programmed health inspections are permitted.  Please note the Appendix A of CPL 02-00-051 is updated yearly.

B.    Site Selection.

1.    Scheduling/Site Selection.  Targeting establishments for a programmed inspection must use neutral and objective selection criteria.

Any inspection that meets the conditions for a heat inspection and any heat-related severe injury report or referral from WHD shall initiate an inspection, unless a physical inspection is not feasible.  For example, the construction operation was temporary and work has ended, or the report is from an area that is difficult to reach (*e.g.*, mountain area, gorge, swamp).  The list of industries in Appendix A, Table 1 (non-construction), of this Heat NEP will

be used to create a master list of targeted establishments within the North American Industrial Classification System (NAICS). NAICS is a systematic way to classify businesses by the products or services they provide. A list of establishments that are in the local jurisdiction of each AO will be generated by the Office of Statistical Analysis (OSA) ListGen application. The AO will inspect establishments in the Random Number order as provided on the list to ensure neutrality. OSA will provide each AO with access to software and a database that includes the establishments with the NAICS codes covered under this NEP.

Appendix A, Table 2, lists construction industries that are likely to have heat-related hazards. The AO should use C-Target procedures to find active construction sites to add to their list of heat inspections for programmed inspections during days of locally issued heat warnings or advisories (*see* Appendix G). (Note that if a construction project from the C-Target list is inspected, the AO must account for all projects from that list by either conducting an inspection or deletion in accordance with CPL 02-00-155). While travelling to work sites, CSHOs should be vigilant of circumstances where employees in the industries listed in Appendix A, Table 2, are exposed to heat-related hazards.

Appendix A, Table 3, lists non-construction industries with a history of heat-related incidents that are not in ListGen. For industries in Table 3, alternative sources may be utilized (*e.g.*, Reference USA, a business and residential information database). The AO should use local knowledge to add these industries to the inspections list.

2.  Additions. AOs may also add establishments to the ListGen Master List based on current activity at a construction site, or other non-construction establishments, based on local evidence that heat exposures have occurred in the five years preceding the effective date of this Instruction for industries not included in ListGen. The local evidence may be based on OIS incident data, employer-reported heat-related illness or fatalities, regardless of NAICS, and workers' compensation data. Other sources of local information may include but are not limited to: (a) commercial directories (*e.g.*, Reference USA); (b) telephone listings; (c) local knowledge of establishments; (d) information from other government agencies with joint jurisdictions, such as Wage and Hour Division, U.S. Department of Agriculture (USDA), Environmental Protection Agency (EPA), Health Department; and (e) media referrals. The AO must retain documentation of every addition made to the Master List and, prior to use, the revised List must be re-randomized either by OSA or by the AO using the RANDBETWEEN function in Microsoft Excel.

ListGen assigns random numbers and provides the establishment lists in random number order. Acceptable methods for generating cycles can be found in the memorandum dated November 12, 2014, Establishment-Targeting Lists for Emphasis Programs. Subsequent cycles will be created in the same manner until such time that this NEP is cancelled or until all establishments on the list have been assigned to a cycle. Cycles may be

created all at once or as necessary and need not be of the same size. Targeted Federal locations can be added when appropriate.

3. <u>Deletions</u>.  AOs may delete from their target list establishments known to be out of business, documenting the basis for such determinations. AOs shall not delete establishments with 10 or fewer employees from the establishment list except as indicated in XII.D.14. below of this instruction.

AOs may delete from their target list any establishment that does not have an exposure to heat-related hazards or that has had a comprehensive or partial health inspection that addressed heat hazards, with an Opening Conference date occurring within the twelve (12) previous months and resulting in one of the following outcomes:

a) Serious citations issued related to heat hazards which are under contest or for which the abatement period has not yet expired; or

b) No serious citations were issued for hazards related to exposure to heat-related hazards; or

c) Serious citation(s) were issued for hazards related to exposure to heat-related hazards, but a follow-up inspection documented appropriate and effective efforts by the employer to abate the serious hazards cited (*e.g.*, work practice or administrative controls in place, engineering controls installed).

*Note:  The AD may use discretion in scheduling a heat inspection at a previously cited establishment inspected within the previous twelve (12) months, even where related other-than-serious citations, Hazard Alert Letters, or Notification Letters were issued.*

The AO shall maintain documentation supporting any deletions made under this paragraph (see below).

4. <u>Maintaining Inspection List/Cycles and Documentation</u>:   The AD is responsible for maintaining documentation necessary to demonstrate that the AO has used the NEP inspection list and cycles in accordance with this Instruction, including documenting all deletions, deferrals, or other modifications.  The AO shall maintain all such inspection lists, cycles, and documentation for a period of three years following the completion of all inspections conducted under this NEP plan.  *See* [CPL 02-00-025](#), *Scheduling System for Programmed Inspections*; and [ADM 03-01-005](#), *OSHA Compliance Records.*  For construction, *see* [CPL 02-00155](#), *Inspection Scheduling for Construction.*

C.   <u>Inspection Scheduling</u>.

Within a specified cycle, heat-related health inspections shall be scheduled, in accordance with the FOM, with the highest priority given to fatality inspections, and then to other unprogrammed inspections (*i.e.*, complaints and referrals) alleging employee exposure(s) to heat-related hazards.  The Area Office (AO) may schedule follow-up inspections related to heat-related hazards to meet the

goals of this NEP where unprogrammed activities have decreased sufficiently to allow that.

1. <u>Scheduling</u>.  The AO must schedule inspections by establishing a cycle.  A "cycle" is a subset of establishments from the Master List that allows the Area Office to use its enforcement resources more efficiently, including arranging establishments' order within a cycle.  *See* OSHA Memorandum, *[Establishment-Targeting Lists for Emphasis Programs](#)*, November 12, 2014, page 3.

   The AO may schedule inspections one of the following ways:

   a) If the AO intends to inspect the entire Master List, they may schedule the inspections in any order. If the AO uses this method, they must account (through inspections and deletions) for the entire list. The AO cannot inspect off a new list until the entire previous list is completed.

   b) The AO may inspect the facilities in the random number order provided. If the AO uses this method, it does not need to complete the entire Master List.

   c) The AO may create cycles by choosing a set number of establishments from the Master List, sorted in random number order. For example, it can select the first 10 establishments on the Master List, sorted by ascending random number as a first cycle of 10 establishments. The AO can then inspect those establishments in any order but must finish the cycle prior to beginning a second cycle. Once the first cycle is complete, the AO can inspect the next ten establishments on the randomized Master List as its second cycle.

   Some establishments selected for inspection under this NEP may also be selected under other NEPs and/or LEPs, or under the current Site Specific Targeting (SST) Plan.  Whenever possible, inspections under this NEP should be carried out concurrently with other programmed inspections.

2. <u>Unprogrammed Inspections</u>.

   Fatalities/catastrophes, complaints, or referrals for any general industry, maritime, construction, or agriculture operation alleging hazardous exposures to heat (outdoors and/or indoors), regardless of whether they fall within a targeted industry of this NEP, shall be handled in accordance with the hierarchy of initiating inspections as outlined in [FOM Chapter 9](#), *Complaint and Referral Processing*, and [Chapter 11](#), *Imminent Danger, Fatality, Catastrophe, and Emergency Response,* and in accordance with the specific procedures listed below:

   a) <u>Fatalities/Catastrophes</u>.

      Fatality incidents shall be prioritized for inspections.

   b) <u>Complaints and Referrals</u>.

      Allegations of potential worker exposures to heat (*e.g.*, insufficient

controls in place such as access to water, rest, and/or shade), or involving workers suspected or confirmed of a heat-related illness, shall be given priority for on-site inspections.

During all unprogrammed inspections, CSHOs must document the information required in Section XII.D.

3. Follow-up Inspections.

Initial follow-up inspections should be conducted for establishments that were previously inspected as a result of a heat-related fatality and were issued citations, to determine if abatement was implemented for heat-related hazards. Additional follow-up inspections should be conducted for any establishment receiving serious violations for heat-related hazards or in some cases, other-than-serious citations.

The AD may also select establishments for follow-up inspections where any of the following applies:

a) The establishment previously received an other-than-serious recordkeeping violation related for failure to record a heat-related illness or injury, and other circumstances at AD discretion.

b) A previously inspected employer continues to expose employees to heat-related hazards, or has not fully and properly implemented required engineering controls, administrative controls, work practices, and personal protective equipment noted in the abatement certification, within the time period specified; or

c) If there are any violations for which abatement verification has not been provided.

Follow-up inspections are to be conducted in accordance with FOM, Chapter 3, Section XII.K. *Follow-up and Monitoring Inspections*, based on available resources and using either on-site, remote, or a combination of on-site and remote methods.

For situations where follow-up onsite inspections cannot be performed (*e.g.*, where CSHOs are unable to conduct an on-site inspection), the AD, when possible, may require that the employer provide written updates documenting the progress of abatement efforts, per 29 CFR § 1903.19.  The AO does not need to send abatement verification to the National Office, but such documentation shall be available to the National Office on request.

If resources allow, follow-up inspections/investigations may also be initiated to verify abatement of any hazards identified in Hazard Alert Letters for heat-related hazards.

4. Programmed Inspections.

a) High-hazard Industries.

Appendix A lists high hazard industries with NAICS codes having among the highest numbers of BLS heat cases, incidence rates and

11

BLS median days away from work for the years 2015-2020, OSHA severe injury reports, OSHA-recorded inspections, heat-related violations, and Hazard Alert Letters issued since January 2018. (*See* Appendix A for more detailed information about the sources OSHA used to identify affected industries.). Appendix A, Table 1, has a list of targeted industries in ListGen to be used for programmed Heat NEP inspections during days of locally-issued heat warnings or advisories (*see* Appendix G).

b) Site-Specific Targeting (SST).

If an establishment selected for inspection under this NEP is also selected under the current SST plan, where possible the NEP and SST plan inspections should be conducted concurrently. Refer to OSHA Instruction, CPL 02-01-062, *Site-Specific Targeting (SST)* (or current version).

5. Whistleblower Protections.

Workers requesting inspections, complaining of heat-related exposure, or reporting illnesses or retaliation, may be covered under one or more whistleblower protection statutes. Inform the workers of their protections from retaliation and refer them to the OSHA website, here, for more information, including how to file a retaliation complaint. If the worker is alleging some form of retaliation, the AO must submit a referral to the Regional Whistleblower Protection Program using the appropriate intake form and regional referral process.

6. Coordination with Wage and Hour Division.

Workers complaining of inadequate working or living conditions or wages, may be protected by one or more statutes enforced by the WHD. WHD and OSHA offices are encouraged to initiate referrals and exchange appropriate information relating to complaints, inspections, or investigations and related matter to support the enforcement activities of the agencies.

If OSHA discovers information relating to a possible violation of the laws and regulations enforced by WHD, OSHA offices are encouraged to provide timely information to WHD by making a referral, per the MOU, dated August 4, 2021. Workers with questions or concerns should contact WHD at 1-866-487-9243 or visit their website, here, to be directed to the nearest WHD office for assistance.

7. Cooperative Programs.

Employers participating in select cooperative programs may be exempt from programmed inspections. After inspection lists are generated, the AO should contact the Cooperative and State Programs office in their Regional Office to determine if any company on the list should be exempted. The CSHO should follow the procedures outlined in FOM Chapter 2, Program Planning, for further guidance if an On-Site Consultation visit is in progress, or if the establishment is a participant in OSHA's Voluntary Protection Programs

12

(VPP) or the Safety and Health Achievement Recognition Program (SHARP) or Pre-SHARP.  Even if an employer is exempt from a programmed inspection, the AO should notify the employer in writing that they are required to comply with all applicable OSHA standards and the General Duty Clause.  In such cases, the Regional Consultation Program Officer shall follow-up with the responsible Consultation Program Manager.

D.    Inspection Procedures and Case File Documentation.

Programmed inspections under a new NEP are typically initiated after a 90-day outreach period, as required for LEPs and REPs in accordance with OSHA Memorandum on Procedures for Local and Regional Emphasis Programs, December 3, 2014.  However, OSHA has continually conducted outreach at the National, Regional, and Area Office levels throughout the heat campaign that was first initiated in 2011.  In addition to the ongoing heat campaign, on September 1, 2021, OSHA issued a heat initiative enforcement memorandum instructing the Regions to increase their efforts to prioritize heat complaints and referrals and conduct interventions when they become aware of possible heat hazard conditions.  Therefore, the 90-day outreach goal for this enforcement initiative has been achieved.  Regions may perform more outreach as needed.

OSHA will include additional information in its outreach efforts on the Heat NEP through webinars and conferences at the national and regional levels.  The Agency will continue to conduct outreach, per Section XII.G, throughout the NEP's course of implementation while responding to complaints, referrals, hospitalizations, and fatalities related to heat, and shall code such activities in accordance with Section XII.F.

All inspections shall be conducted in accordance with the general provisions of the FOM.  Other procedures related to scheduling and conducting inspections include the following:

1.    OSHA Area Offices shall assess the potential for heat-related illnesses, injuries, and deaths where heat-related hazards may exist in indoor work areas or at outdoor work areas on heat priority days when the heat index is expected to be 80°F or higher.  CSHOs should use internal guidance material for assistance in performing heat investigations.  The procedures to assess heat conditions and workload are described in the OSHA Technical Manual (OTM), Section III, Chapter 4 - Heat Stress.  Inspections under this NEP shall only be conducted by CSHOs who have reviewed the appropriate safety and health precautions as outlined in the FOM Chapter 3, *Inspection Procedures*. A review of any potential heat-related hazards should be included in any programmed or unprogrammed inspection, as mentioned above.

Inspections should be completed and citations, or hazard alert letters, if any, should be issued expeditiously to facilitate prompt abatement.  After any type of inspection initiated under this NEP, where evidence of a potential 5(a)(1) violation is not present, an intervention with the employer should be conducted to identify and prevent potential heat-related illnesses.  Heat hazard interventions are informational in nature and should include discussions with

13

employers regarding taking proactive employee protection measures (*e.g.*, easy access to cool water, cooling areas, and acclimatization) and providing heat posters and other outreach materials to mitigate the hazard.

*Note:  In cases where it is geographically infeasible to expeditiously initiate an inspection of an unprogrammed activity, the Area Office will initiate contact with the employer using non-formal procedures to encourage speedy interventions to prevent the potential for heat-related illnesses.*

2. During heat-related inspections, CSHOs shall:

   a) Review OSHA 300 Logs and 301 Incident Reports for any entries indicating heat-related illness(es),

   b) Review any records of heat-related emergency room visits and/or ambulance transport, even if hospitalizations did not occur, [this may require the use of a Medical Access Order],

   c) Interview workers for symptoms of headache, dizziness, fainting, dehydration, or other conditions that may indicate heat-related illnesses, including both new employees and any employees who have recently returned to work,

   d) Determine if the employer has a heat illness and injury program addressing heat exposure, and consider the following:

      - Is there a written program?
      - How did the employer monitor ambient temperature(s) and levels of work exertion at the worksite?
      - Was there unlimited cool water that was easily accessible to the employees?
      - Did the employer require additional breaks for hydration?
      - Were there scheduled rest breaks?
      - Was there access to a shaded area?
      - Did the employer provide time for acclimatization of new and returning workers?
      - Was a "buddy" system in place on hot days?
      - Were administrative controls used (earlier start times, and employee/job rotation) to limit heat exposures?
      - Did the employer provide training on heat illness signs, how to report signs and symptoms, first aid, how to contact emergency personnel, prevention, and the importance of hydration?

   e) Document conditions relevant to heat-related hazards, including:

      - The heat index and additional weather data from that day, *e.g.*, heat alerts from the NWS, data from the OSHA-NIOSH Heat Safety Tool App, saving a screenshot on a mobile phone or tablet.  Additional information may be needed or indoor heat investigations

      - Observe and document current conditions and those at the time the

14

incident occurred (for unprogrammed inspections), including:

- o  Observed wind speed,
- o  Relative humidity,
- o  Dry bulb temperature at the workplace and in the shaded rest area,
- o  Wet-bulb globe temperature at the workplace, (ensure the equipment has been properly calibrated prior to use),
- o  Cloud cover (no clouds, 25%, 50%, 75%, 100%), and
- o  The existence of any heat advisories, warnings, or alerts the previous days.

f)  Identify activities relevant to heat-related hazards. These can include, but are not limited to:

- Potential sources of heat-related illnesses (*e.g.*, working in direct sunlight, a hot vehicle, or areas with hot air, near a gas engine, furnace, boiler, or steam lines),
- The use of heavy or bulky clothing or equipment, including personal protective equipment,
- Estimate workload exertions by observing the types of job tasks performed by employees and whether those activities can be categorized as moderate, heavy, or very heavy work, considering both average workload and peak workload,
- Duration of exposure during which a worker is continuously or repeatedly performing moderate to strenuous activities.

3.  OSHA Area Offices shall instruct CSHOs to be vigilant, during their travels to job sites, to conduct compliance assistance or self-referral inspections of outdoor work environments in plain view (*e.g.*, construction worksites, highway and bridge work, lawn care, and maintenance workers, etc.) where employees may be performing moderate or more strenuous work during heat priority days or working in direct sunlight (or other radiant heat sources) for extended periods of time. Observing potential heat-related hazards while travelling is particularly important for early intervention and prevention of heat-related incidents on construction sites, *see* Appendix A, Table 2.  Where there is no heat hazard present or where the employer has an adequate heat illness prevention program, the CSHOs should provide any additional relevant information.

4.  Once an inspection has been scheduled for an identified establishment, and prior to opening the inspection, CSHOs shall conduct a search of the employer's citation and fatality/accident history in OSHA's Establishment Search Page or by using the OIS to determine any prior heat-related issues.

5.  The CSHO shall also determine whether the identified establishment is scheduled for any other programmed inspection (*e.g.*, SST, NEP, LEP).

15

Whenever possible, inspections under this NEP should be carried out concurrently with other programmed inspections.

6. At the opening conference, the CSHO will verify the correct NAICS code for the establishment with the employer and determine whether work practices that may result in worker exposures to heat-related hazards are present at the facility or worksite. The CSHO shall review the establishment's injury and illness logs (OSHA 300 and OSHA 300A) for three calendar years prior to the inspection and the current year to date to identify any work-related cases of heat illness.

   *Note 1: Not all industries covered by the Heat NEP are required to maintain OSHA records, and CSHOs should check to see if the industry of the establishment being inspected is in Appendix A to subpart B of Part 1904. If the establishment is exempt from maintaining OSHA records, either because of size (per 29 CFR § 1904.1) or industry classification (per § 1904.2), it cannot be cited for failing to record an injury or illness.*

   *Note 2: CSHOs shall always verify an employer's assertions regarding workplace conditions or worker exposures to heat by interviewing employee(s) at the site.*

7. If the inspection is initiated by an unprogrammed or follow-up activity, or the establishment is targeted under another NEP or LEP, the CSHO shall proceed to determine any additional alleged items or those covered by another emphasis program. The CSHO will also inform the employer and interviewed employees of their rights and responsibilities under Section 11(c) of the OSH Act. If the unprogrammed activity that initiated this inspection included an allegation of retaliation, the CSHO shall refer this allegation to the Regional Whistleblower Protection Program.

   If the CSHO determines during the walkaround or background research that workers may be performing tasks which include exposure to heat-related hazards, then they shall proceed with the inspection following the procedures in this NEP.

8. A review of any potential heat-related hazards should be included in any programmed or unprogrammed inspection where radiant heat sources exist in indoor work areas or at outdoor work areas on heat priority days. CSHOs should conduct compliance assistance and document it where heat-related hazards do no warrant issuing citations.

9. CSHOs can use the OSHA-NIOSH Heat Safety Tool App as a resource. This App provides current and projected heat indices for that day at the current location. The App indicates the hazard levels as: **Caution** (less than 80°F HI), **Warning** (80°F – 94°F HI), **Danger** (95°F HI or higher), and offers recommended actions to protect workers. When conditions for previous days are needed, the NWS provides certified historic weather data to document past conditions on. CSHOs should use nationally available tools assembled on the CSHO Resources intranet webpage to reconstruct data when appropriate on a

16

particular day.

10. WBGT readings will be determined in accordance with procedures on conducting WBGT sampling and performing workplace assessments, OSHA Technical Manual (OTM), Section III, Chapter 4. WBGT sampling is considered a more accurate indicator of the effects of heat on individuals than dry bulb thermometer readings. Dry bulb thermometer readings measure air temperature only. As noted above, CSHOs should also conduct workload assessments through direct observation of work practices/operations and employee interviews. They should particularly note if heavy or bulky clothing or equipment is used.

11. If inspections occur on days different from the incident triggering the complaint, referral, SIR, or fatality, CSHOs should obtain historic WBGT logs/records, if available. If records are not available, the OTM provides a method for calculating WBGT values using historic weather data available on the internet.

12. Report heat-related inspections to the regional heat coordinator as soon as possible. Area Offices should work with the Regional Office to contact the Office of Occupational Medicine and Nursing early in the inspection (especially in fatality or hospitalization cases) to obtain Medical Access Orders, if needed. For technical assistance, contact the Health Response Team and/or the Cincinnati Technical Center on the use of WBGT instrumentation. Contact DEP's Office of Health Enforcement, for assistance with enforcement policy.

13. During any inspection, where other health or safety hazards have been alleged in a complaint or observed in plain view during the walkaround, CSHOs shall investigate as appropriate. Safety or health referrals may be made, subject to any current exemptions or limitations on such activity.

14. Ensure CSHOs are aware of the annual appropriations exemption list issued each year as Appendix A of CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*. Several targeted industries listed in Appendix A of the Heat NEP were listed in the March 2022 Appendix A of CPL 02-00-051. Section XI.B.4.b of CPL 02-00-051, provides: "Apparent safety violations noted during a health inspection of an establishment with 10 or fewer employees exempted from programmed safety inspections shall not be cited or referred for later inspection unless such violations create an imminent danger." Section XI.B.4 notes: "A Compliance Officer can discuss non-citable violations during the closing conference and provide information relating to On-Site Consultation services." In addition, if the CSHO determines that the "farming operation" exemptions apply, then they should immediately close the inspection and take no further action.

15. The CSHO will inform workers of their right to file a whistleblower complaint if they experience retaliation for providing assistance to OSHA during an inspection, such as filing a safety and health complaint with OSHA, reporting a work-related injury or illness, or complaining about exposure to heat-related

17

hazards or any other workplace hazards to management.  Any complaint of alleged retaliation shall be promptly referred to the Regional Whistleblower Protection Program.

16. <u>Citation Guidance</u>: CSHOs shall consult this Instruction and its references, and any internal guidance on heat enforcement available on the DEP intranet page, and guidelines in evaluating whether there is sufficient evidence to issue a General Duty Clause (GDC), Section 5(a)(1)) citation for heat-related hazards. Any proposed citation for a heat-related health hazard for both indoor and outdoor work activities shall be issued under the GDC when all elements of a violation have been established. CSHOs should document the relationship between the workplace operations and exposure(s) and the potential for heat-related illness(es), specifically focusing on all ambient conditions and activities that present heat-related hazards.

a) Ensure that the hazard is clearly and specifically set forth in the citation. Avoid solely describing an employer's failure to implement specific heat illness abatement measures as the hazard.  The Regional Solicitor office shall be consulted for assistance when developing these cases prior to issuing any heat-related 5(a)(1) citations.  A sample Alleged Violation Description (AVD) for a heat-related illness 5(a)(1) violation is located in Appendix C.  A Hazard Alert Letter (HAL) may be sent when all the elements of a GDC violation have not been established.  A sample HAL is located in Appendix D, and a corresponding letter template is in the OIS.

b) Several OSHA standards may also be applicable to address worker protection in hot environments including, but not limited to, use of personal protective equipment, sanitation, medical services and first aid, and recordkeeping.

- The Recordkeeping regulation at 29 CFR § 1904.7(b)(5) requires that employers record certain work-related injuries and illnesses.  If a worker requires medical treatment beyond first aid, the worker's illness or injury must be recorded, such as unconsciousness or use of oxygen.  However, if a worker merely requires first aid treatment for the worker's condition, the employer is not required to record the condition.  For example, if a worker becomes unconscious, the worker's condition must be recorded.  However, if a worker is only instructed to drink fluids for relief of heat stress, the worker's condition is not recordable.  Refer to 29 CFR § 1904.7(b)(5) for an explanation of the difference between medical treatment and first aid. Recordkeeping issues must be handled in accordance with OSHA Instruction, CPL 02-00-135.

*Note:  Not all industries covered by the Heat NEP are required to maintain OSHA records, and CSHOs should check to see if the industry of the establishment being inspected is on Appendix A to subpart B of Part 1904.  If the establishment is exempt from maintaining OSHA records, either because of size (per 29 CFR §*

18

*1904.1) or industry classification (per § 1904.2), it cannot be cited for failing to record an injury or illness.*

- The Sanitation standards at 29 CFR § 1910.141, 29 CFR § 1915.88, 29 CFR § 1917.127, 29 CFR § 1918.95, 29 CFR § 1926.51, and 29 CFR § 1928.110 require employers to provide cool potable water.

- The general construction safety training and education standards for construction at 29 CFR § 1926.21 and 29 CFR § 1926.20, requiring a Safety and Health Program, as well as frequent and regular safety and health inspections may also be applicable.

  *Note: Issuance of citations or HALs should be expedited so that proposed abatement measures may be implemented earlier to protect employees exposed to heat hazards.*

In all cases where the AD determines that a worksite condition exists warranting issuance of a 5(a)(1) citation for occupational exposure to the heat-related hazards, the Regional Office shall follow current National Office guidance in this NEP. Heat cases proposing a 5(a)(1) are novel cases and must be submitted to the National Office following novel case procedures, until otherwise instructed.

17. Establishments with more than one location engaged in the same or similar types of operations, may also have employees who are potentially exposed to heat-related hazards at other work sites. Compliance Officers should consult with Area and Regional Offices to provide a letter to the corporate entities of such establishments, informing them of any heat-related OSHA inspection(s), including sending relevant information on protective measures. Refer to Appendix E of this Instruction for a sample letter to employers.

E. **CSHO Protection.**

1. When performing an on-site inspection, CSHOs must observe all appropriate precautions to protect themselves from heat-related illnesses. CSHOs should ensure that they have protected themselves from the dangers of heat exposure prior to performing any enforcement actions in the field in accordance with the job hazard analysis for that worksite, and immediately stop the inspection if they or an employee has symptoms of heat illness. Supervisors shall ensure CSHOs comply with all safety and health management system (SHMS) guidance and requirements developed as part of the ADM 04-00-003, *OSHA Safety and Health Management System*. Additional safety precautions will be needed if the CSHO believes other hazards may exist in the workplace. CSHOs should review and follow the Regional SHMS policies and procedures to be prepared for foreseeable hazards which may arise during the inspection. Appendix B of this Instruction provides a CSHO pre-inspection checklist.

2. CSHOs shall also protect themselves against other hazards during an inspection and must use additional personal protective equipment as necessary to protect themselves from hazards (*e.g.*, gloves, goggles). Additional CSHO precautionary guidance and inspection tools are provided in Appendix B of

this Instruction.  *See* FOM Chapter 3, Section II.C, *Safety and Health Issues Relating to CSHOs*.  *See also* ADM 04-00-003, *OSHA Safety and Health Management System*.

F.     OSHA Information System (OIS) Coding Instructions.

All enforcement activities (*i.e.*, inspections, complaints, and referrals, etc.) and consultation requests/visits conducted under this NEP shall be coded with the new code, "HEATNEP."  The existing heat codes, "N-02-HeatGI, N-02-HeatCON, N-02-HeatMI, N-02-HeatAG," are also required in the Additional Code field for Federal inspections, as well as for inspections by State Plan offices that adopt this NEP.  However, new for this NEP is that technical assistance activities related to heat should be captured on the compliance assistance Form 55 using the N-02 heat codes, above, by industry, which is being added to the Form 55 in the OIS.  These codes must be applied even if the establishment was not among the targeted NAICS listed in Appendix A, as long as heat-related hazardous conditions were investigated.  Federal OSHA and Consultation Program compliance assistance activities related to heat illness prevention should also continue to be coded with the topic "Heat Illness Prevention."  Programmed heat inspections will be conducted when the NWS has announced a heat warning or advisory for the local area and shall be coded as Heat NEP inspections.  Unprogrammed heat inspections should also be coded as a Heat NEP inspection.

Additionally, inspections conducted under this NEP are to be coded under Inspection Category as a "Health" inspection unless the inspection was initiated as an unprogrammed safety inspection where no heat-related hazards were initially alleged but were later found during the course of the inspection.  In such a case, the inspection should be coded under Inspection Category as a "Safety" inspection.

CSHOs should identify any heat violations or HALs using the General Duty Keyword in the violation screen.  CSHOs should enter "Heat" in the general duty keyword section.  *The Heat keyword is in addition to the other required heat coding for violations, such as Related Event Codes as applicable.*

Table 1, below, provides a summary of all heat related OIS codes.

**Table 1. List of OIS codes for heat-related inspections and activities**

| OIS Field | OIS Codes | Activity Type |
|---|---|---|
| NEP | HEATNEP | All enforcement and consultation activities conducted under this NEP (e.g., complaints, fatalities, referrals, inspections, visits). |
| Additional Code | N-02-HEATGI, N-02-HEATCON, N-02-HEATMI, N-02-HEATAG | These existing codes will continue to be used to track industry groups for all enforcement activities, and now also for compliance assistance. |
| General Duty Keyword | Heat | All heat-related violations and HALs |
| Compliance Assistance Activity Topic | Heat Illness Prevention | Existing topic for all heat-related compliance assistance activities will continue to be used. In addition, for task type "technical assistance" add additional codes as directed above. |

G.   Outreach.

1.   Offices.

As discussed above, at the beginning of Section XII.D, each Area Office shall continue conducting outreach programs concerning heat illnesses, including as it pertains to new guidance and this NEP, which is generally in accordance with OSHA Memorandum on Procedures for Local and Regional Emphasis Programs, December 3, 2014. The National Office shall continue to conduct nationwide outreach on heat illness prevention upon issuance of this NEP.

2.   Suggested Local Outreach.

Outreach activities may include the following:

a)   Sharing information on the Heat NEP and available compliance assistance tools and resources, including no-cost On-Site Consultation services available to small businesses. This information may be distributed in written form (e.g., via letter or email), or conveyed in webinars or presentations at conferences and other events to employers, employee groups, and unions in heat hazard industries such as, but not limited to those in Appendix A.

b)   Enhancing collaborations with national and regional offices of federal agencies with similar outreach goals, such as the USDA, EPA, and the WHD, to conduct outreach on the Heat NEP and heat illness prevention.

c)   Collaborating with agency stakeholders, including OSHA cooperative program participants, to share information on the NEP and best practices

21

or effective means of reducing or eliminating worker exposure to heat-related hazards.

d) Building new stakeholder relationships with organizations that can help disseminate information to workers and employers in heat hazard industries.

e) Working with On-Site Consultation Programs, local Small Business Development Centers (SBDCs), and other organizations to reach small businesses in heat hazard industries.

f) Sharing information on the rights of workers and responsibilities of employers, including whistleblower protections and anti-retaliation principles. The Recommended Practices for Anti-Retaliation Programs can be used as a resource and outreach tool, see Appendix D.

**Targeted Audiences for Outreach**.

- Local employers in high-hazard industries. *See also* targeted industries in Appendix A.

- Unions, worker centers, COSH groups (Councils for Occupational Safety and Health), and other organizations committed to advancing protections for underserved worker populations.

- Local companies and employer associations (*e.g.*, trade associations, contractor groups, farm bureaus, local chambers of commerce) in industries such as, but not limited those in Appendix A.

- Insurance companies.

- Local professional associations (*e.g.*, local safety councils, local agriculture extensions).

- Temporary employment agencies providing employees to targeted employers.

- Local newspapers, TV stations, and trade magazines (these can help inform the public and hard-to-reach employers).

- Local government (*e.g.*, health departments, departments of correction, emergency services, construction permitting agencies, and departments of transportation).

- Local suppliers of materials or services, equipment transportation companies, such as landscapers, and delivery services.

**Online Materials.**

OSHA online resources may be of assistance in this outreach effort.  A variety of these information sources can be accessed through OSHA's public webpage, including OSHA's webpage for the Heat Illness Prevention Campaign, and Safety and Health Topics webpage on Heat

Exposure.  Internal resources for heat are also available on the OSHA intranet.

H.  <u>Coordination.</u>

   1.  National Office.

     This NEP will be coordinated by the DEP Office of Health Enforcement (OHE).  All questions and comments regarding this NEP should be directed to OHE.  For inspection support, Area and Regional Offices may also coordinate, as needed, with the Directorate of Technical Support and Emergency Management's (DTSEM), Office of Occupational Medicine and Nursing (OOMN), the OSA, the Cincinnati Technical Center, the Salt Lake Technical Center's Health Response Team, and other offices.  For questions about outreach support and resources, contact the Directorate of Cooperative and State Programs' (DCSP) Office of Outreach Services and Alliances.

   2.  Regional Office.

     Each Regional Administrator is required to identify a coordinator for this NEP who will work with DEP's Office of Health Enforcement.

I.  <u>Program Review.</u>

To assess the effectiveness of this NEP, DEP will review the NEP within 12 months of issuance, per ADM 03-00-003, to determine whether the policy contained herein will be continued, and take steps to assure its replacement with a cleared Instruction, if needed, as soon as possible.  The program review reports shall, at a minimum, address the NEP goal (*see* Section XI), in accordance with established Agency procedures.  Data on effectiveness may include:

1.  The number of employers covered by the inspections.

2.  The number of workers removed from hazards.

3.  Abatement measures implemented.

4.  Number of violations related to specific targeted hazards.

5.  Any indices that relate directly to measures that may be included in the DOL Strategic Plan and/or the OSHA Agency Management Plan.

6.  Total number of prosecutable, heat-related violations of OSHA standards (including final citations resulting from the settlement or litigation of contested cases).

**Appendix A:  Target Industries for the Heat NEP**

Programmed inspections under this NEP shall occur on any day that the NWS has announced a heat warning or advisory for the local area (*see* Appendix G for a description of these types of alerts). This appendix includes three tables of industries (NAICS codes at the 4-digit level) with the following: 1) High numbers or high incidence rates of heat related illnesses from the Bureau of Labor Statistics (BLS) data; 2) Elevated number of days away from work (BLS) or high numbers of severe cases of heat-related illnesses, as indicated by death or hospitalization, from OSHA severe injury reports made by employers; or 3) the highest number of heat-related general duty clause 5(a)(1) violations and HALs over a 5 year period (1/1/2017 thru 12/31/2021), or the highest number of OSHA heat inspections since 2017.  Table 1 lists non-construction industries in ListGen, Table 2 lists construction industries, and Table 3 lists non-construction industries not found in ListGen.

***Note:***  *It should not be assumed that employee exposure to heat occurs in all establishments within the industries listed in the tables below.  The AO may delete from their target list any establishment that does not have an exposure to heat-related hazards or an establishment that has had a comprehensive or partial health inspection that addressed heat hazards with an Opening Conference date occurring within the twelve (12) previous months, see Section XII B2 Site Selection Deletions.*

**Table 1.** **Non-construction industries that are in ListGen and are likely to have heat-related hazards.**

| 2017 4-Digit NAICS Code | 2017 NAICS Industry Sector Title |
|---|---|
| 1121 | Cattle Ranching and Farming |
| 1151 | Support Activities for Crop Production |
| 2131 | Support Activities for Mining |
| 3118 | Bakeries and Tortilla Manufacturing |
| 3211 | Sawmills and Wood Preservation |
| 3241 | Petroleum and Coal Products Manufacturing |
| 3251 | Basic Chemical Manufacturing |
| 3272 | Glass and Glass Product Manufacturing |
| 3311 | Iron and Steel Mills and Ferroalloy Manufacturing |
| 3314 | Nonferrous Metal (except Aluminum) Production and Processing |
| 3315 | Foundries |
| 3323 | Architectural and Structural Metals Manufacturing |
| 3329 | Other Fabricated Metal Product Manufacturing |
| 3361 | Motor Vehicle Manufacturing |
| 3362 | Motor Vehicle Body and Trailer Manufacturing |
| 3363 | Motor Vehicle Parts Manufacturing |
| 3364 | Aerospace Product and Parts Manufacturing |
| 3365 | Railroad Rolling Stock Manufacturing |

| 3366 | Ship and Boat Building |
| 3369 | Other Transportation Equipment Manufacturing |
| 3371 | Household and Institutional Furniture and Kitchen Cabinet Manufacturing |
| 4239 | Miscellaneous Durable Goods Merchant Wholesalers |
| 4241 | Paper and Paper Product Merchant Wholesalers |
| 4242 | Drugs and Druggists' Sundries Merchant Wholesalers |
| 4243 | Apparel, Piece Goods, and Notions Merchant Wholesalers |
| 4244 | Grocery and Related Product Merchant Wholesalers |
| 4245 | Farm Product Raw Material Merchant Wholesalers |
| 4246 | Chemical and Allied Products Merchant Wholesalers |
| 4247 | Petroleum and Petroleum Products Merchant Wholesalers |
| 4248 | Beer, Wine, and Distilled Alcoholic Beverage Merchant Wholesalers |
| 4249 | Miscellaneous Nondurable Goods Merchant Wholesalers |
| 4413 | Automotive Parts, Accessories, and Tire Stores |
| 4442 | Lawn and Garden Equipment and Supplies Stores |
| 4881 | Support Activities for Air Transportation |
| 4882 | Support Activities for Rail Transportation |
| 4883 | Support Activities for Water Transportation |
| 4884 | Support Activities for Road Transportation |
| 4889 | Other Support Activities for Transportation |
| 4921 | Couriers and Express Delivery Services |
| 4922 | Local Messengers and Local Delivery |
| 4931 | Warehousing and Storage |
| 5311 | Lessors of Real Estate |
| 5617 | Services to Buildings and Dwellings (includes landscaping services, tree removal and tree trimming services) |
| 5621 | Waste Collection |
| 5622 | Waste Treatment and Disposal |
| 5629 | Remediation and Other Waste Management Services |
| 6231 | Nursing Care Facilities (Skilled Nursing Facilities) |
| 7211 | Traveler Accommodation |
| 8111 | Automotive Repair and Maintenance |
| 8113 | Commercial and Industrial Machinery and Equipment (except Automotive and Electronic) Repair and Maintenance |
| 8114 | Personal and Household Goods Repair and Maintenance |

The AO should use C-Target to find active construction sites to add to their programmed inspection list on any day that the NWS has issued a heat warning or advisory for the local area. (Note that if a project from the C-Target list is inspected, the AO must account for all projects from that list by either inspection or deletion in accordance with CPL 02-00-155). Where OSHA is conducting an inspection for other purposes, a heat-related inspection shall be opened for all hazardous conditions observed in plain view (such as employees or temporary workers in high exposure areas without adequate training, acclimatization or access to water, rest, and shade).

**Table 2.  Construction industries that are likely to have heat-related hazards.[1]**

| 2017 4-Digit NAICS Code | 2017 NAICS Industry Sector Title |
|---|---|
| 2361 | Residential Building Construction |
| 2362 | Nonresidential Building Construction |
| 2371 | Utility System Construction |
| 2372 | Land Subdivision |
| 2373 | Highway, Street, and Bridge Construction |
| 2379 | Other Heavy and Civil Engineering Construction |
| 2381 | Foundation, Structure, and Building Exterior Contractors |
| 2382 | Building Equipment Contractors |
| 2383 | Building Finishing Contractors |
| 2389 | Other Specialty Trade Contractors |

For certain industries not included in ListGen alternative sources may be utilized (*e.g.,* ReferenceUSA).  The AO should use local knowledge to add these industries in Table 3 to the inspections list.

**Table 3.  Industries not included in ListGen or Construction that are likely to have heat-related hazards.**

| 2017 4-Digit NAICS Code | 2017 NAICS Industry Sector Title |
|---|---|
| 1112 | Vegetable and Melon Farming |
| 1113 | Fruit and Tree Nut Farming |
| 2213 | Water, Sewage and Other Systems (may be State or local jurisdiction) |
| 4411 | Automobile Dealers |
| 4412 | Other Motor Vehicle Dealers |
| 4821 | Rail Transportation (may be Federal jurisdiction) |
| 4885 | Freight Transportation Arrangement |
| 4911 | Postal Service |
| 5611 | Office Administrative Services |
| 5612 | Facilities Support Services |
| 5613 * | Employment Services |
| 5614 | Business Support Services |
| 5616 | Investigation and Security Services |
| 5619 | Other Support Services |
| 6117 | Educational Support Services |

---

[1] Construction inspections (C-Target) should be scheduled from a list of **construction worksites** rather than construction employers, due to the mobility of the construction industry, the transitory nature of construction worksites, and work that frequently involves more than one construction employer on the site.

Appendix A-3

| 7225 | Restaurants and Other Eating Places |
| 8112 | Electronic and Precision Equipment Repair and Maintenance |
| 9281 | National Security and International Affairs (includes Customs and Border Patrol, and Transportation Security Administration) |

\* **Note:** *Establishments within the Temporary Help Services (NAICS 5613) industry should not be automatically included in the targeting list for programmed inspections. Although this industry has been among the top industries with OSHA enforcement activities related to heat, this has primarily occurred where services occurred at a high-hazard host. Therefore, to effectively address heat-illness hazards for Temporary Help Services, where OSHA is conducting an inspection for other purposes, a heat-related inspection shall be opened for all hazardous conditions observed in plain view (such as, for example, temporary employees working in high exposure areas without adequate training, acclimatization or access to cool water, rest, and shade).*


Sources for injury and illness data:

A. Bureau of Labor Statistics (BLS) Fatality cases 2015-2019 due to exposure to heat

B. BLS days away from work cases, incidence rates, and median days away from work 2015-2019 due to exposure to heat

C. OSHA severe injury reports fatalities and hospitalizations 2018-2020.  Hospitalization reports include all employer-reported referrals with Event Title "Exposure to Environmental Heat."  Fatality reports include all fatality investigations with victim type "Fatality-OSHA Covered" and any of the following public page keywords: Heat Stroke, Heat Exhaustion, Heat-Related Illness, High Temperature, Overheated, Heat.

D. OSHA inspections 2018-Aug 2021, inspections with additional codes, HEATGI, HEATCON, HEATMI, HEATAG, or HOTDAYS

E. OSHA Hazard Alert Letters and 5a1 violation, 2018-Aug 2021, violations with type "Heat" General Duty Clause keyword.

**Appendix B:  CSHO Pre-Inspection Checklist**

Below follows some protective measures for CSHOs to consider prior to any heat-related inspection:

a.  Ensure the availability and use of all necessary and appropriate personal protective equipment (PPE).

b.  Ensure all PPE, calibrated inspection equipment, and supplies are retrievable and ready for use.

c.  Review any relevant cleaning procedures for equipment and the vehicle, government (GOV) or personal (POV).

d.  For all heat inspections, the manager/supervisor/CSHO, in consultation with designated regional office staff, will develop and document a risk assessment that includes an exposure control plan, Job-Hazard Analysis, and PPE hazard assessment prior to entry and update it as necessary for each inspection, to include individual inspection risks that may not otherwise be captured in a general or overall worksite assessment.  Individual inspection risks may be based on factors such as industry type, on-site hazard location, and acclimatization.

e.  Ensure GOV or POV is road-ready to include gas/fuel, first aid kit, hand sanitizer, disinfecting wipes, or other cleaning and/or disinfecting agents (as required), and bags to dispose of contaminated PPE and used disinfecting wipes.

f.  Ensure there is enough cool water available to drink, while performing an inspection on a heat priority day and in accordance with the JHA in d. above; (NIOSH recommends a cup of water every 15 minutes).  Ensure the air conditioning in the GOV or POV is adequate to provide a cool place to rest during inspections on heat priority days.  ADs are to provide addition items as needed (such as cooler, umbrella).

g.  Develop a document request letter in advance of the opening conference (*e.g.,* programs, OSHA Form 300/300A, and summaries) to be provided to the employer during the opening conference, if needed.

**Appendix C:  Sample Heat-related AVD**

The 5(a)(1) alleged violation description (Alleged Violation Description (AVD)) language for heat-related hazard violations of Section 5(a)(1) must specify the heat-related hazard with particularity, such as listing all sources of heat (*e.g.*, environmental temperature measurements and information on any heat-generating equipment), all specific workplace conditions, activities or practices that expose employees to a likelihood of heat-related illnesses including related work exertions (*e.g.*, performing moderate to very heavy roofing work, dumping heavy refuse bins while running behind a sanitation truck, wearing impermeable protective clothing, and unacclimatized), as applicable.   The alleged heat-related hazard descriptions should *not* include the employer's failure to implement any specific abatement measures, such as acclimatizing workers to the heat; failure to provide cool drinking water, a cool shaded area, or air conditioning; or training workers on heat stress.

Example AVD:

On or about and at times prior to [*the date of the incident*], employees were exposed to the hazard of high ambient heat from [*list sources of and conditions of ambient heat, such as direct sun, boiler, steam, furnace, combustion engine*] during the performance of their job duties, including [*describe specific task(s) and duration of exposure*].  [*List the high temperatures or heat indexes for the days at issue, relative humidity, WGBT measurements and calculations, and any aggravating factors such as heavy or bulky clothing, direct sunlight, and level of workload activities. Include any NOAA heat advisory or alert that supports a high ambient hazardous heat conditions and WBGT if known*]. Such exposures are likely to lead to the development of serious heat-related illnesses such as, but not limited to, heat cramps, heat stress, heat exhaustion, and heat stroke.  [*Describe any heat-related incidents/illnesses or signs and symptoms that may have occurred*].

The inspection case file should document any NWS local heat alerts, the reading on the OSHA-NIOSH Heat Safety Tool App (use the camera screenshot function to save the image of the reading), WBGT temperature if available, wind speed and /direction, radiant heat, cloud cover, length of time the work was performed, and other sources of heat in the workplace. Additionally, document if any of the exposed employees were temporary workers, new hires, or employees returning from prolonged leave periods who were not acclimatized to the heat environment.  *See* Section XII.D for more details.

When listing availability of feasible abatement methods, document all potential measures that would have materially reduced or eliminated the hazard of heat-related illness, such as providing cool water, frequent rest breaks, cooling or cool shaded areas, gradually acclimatizing workers to heat, and access to first aid/prompt medical attention.

Any water or other fluids provided by the employer should be cool and provided in a location that is familiar to the employees, readily accessible to the work, easy to access, and in sufficient quantity for the duration of the work.

Appendix C-1

**Appendix D:  Sample Heat-related Hazard Alert Letter**

**SAMPLE HAZARD ALERT LETTER**
*Note:  This letter must be adapted to the specific circumstances noted in each inspection.  The letter below is an example of the type of letter that may be appropriate in some circumstances. If the employer has implemented, or is in the process of implementing, efforts to address hazardous heat conditions, those efforts should be recognized as appropriate.  CSHOs should tailor the recommended controls outlined below to the specific needs of the employer.  Italicized and bracketed text are for OSHA compliance use only and should not be included in the letter. Please also check all links to ensure they are the most current.*

RE: OSHA Inspection No. [ ]

Dear Employer:

An inspection of your workplace and evaluation of your OSHA recordkeeping logs at [*location*] on [*date*] disclosed the following workplace condition(s) which have been associated with the development of heat-related illnesses in workers:

[*Describe the work performed for each task or job, including the type of PPE worn, the source of heat, WBGT and duration of the heat exposure, reading on the OSHA-NIOSH Heat Safety Tool App during the inspection, any heat notifications from the National Weather Service, and any other information relevant to workers' exposure to the risk of heat-related illness*].

In the interest of workplace safety and health, I recommend that you voluntarily take the necessary steps to materially reduce or eliminate your workers' exposure to the conditions listed above, including, but not limited to, the following:

**General Controls:**
General controls include training, personal protective equipment (PPE), engineering, work practice, and administrative controls, health screening, and heat alert programs, (*see also* NIOSH Criteria Document, *Criteria for a Recommended Standard: Occupational Exposure to Heat and Hot Environments*, February 2016, page 7), available at: www.cdc.gov/niosh/docs/2016-106.

1.  **Training:** inform workers of the following *(Modify this list as appropriate for the specific situation):*
    a.  Hazards of heat-related illnesses.
    b.  How to avoid heat-related illnesses by recognizing and avoiding situations that can lead to heat-related illnesses.
    c.  Recognition of signs and symptoms of heat-related illnesses.
    d.  First aid procedures.
    e.  Employer's program to address heat-related illnesses.

2.  **Personal Protective Clothing and Equipment:** *(CSHOs should recommend the appropriate PPE).*
    a.  Hats for work outdoors in the sun.

Appendix D-1

    b.  For indoor work, loosely worn reflective clothing designed to deflect radiant heat, such as vests, aprons, or jackets.

    c.  Cooling vests and water-cooled/dampened garments may be effective under high temperature and low humidity conditions. However, be aware that cooling vests can become an insulator when they reach the body's temperature.

    d.  In environments where respirator usage is necessary, consult with an industrial hygienist to determine the appropriate clothing to prevent heat stress while still protecting the workers.

    e.  Consider the use of dermal patches for monitoring core temperature to better identify when workers need to be removed from the work area.

    f.  Consider the use of heart rate monitoring to better identify when workers need to be removed from the work area.  Both sustained (180 bpm minus age) and recovery (120 bpm after a peak work effort) heart rates are recommended guidelines for limiting heat strain.

3.  **Engineering Practice Controls:** *(CSHOs should consult the OSHA Technical Manual, Section III Chapter 4, for additional information).*
    a.  Use air conditioning
    b.  Increase general ventilation
    c.  Provide cooling fans
    d.  Run local exhaust ventilation where heat is produced (e.g., laundry vents)
    e.  Use reflective shields to block radiant heat
    f.  Insulate hot surfaces (e.g., furnace walls)
    g.  Stop leaking steam
    h.  Provide shade for outdoor work sites.

4.  **Administrative and Work Practice Controls:** *(CSHOs should consult the OSHA Technical Manual, Section III Chapter 4, for additional information).*
    a.  Schedule hot jobs for cooler parts of the workday; schedule routine maintenance and repair work during cooler seasons of the year when possible.
    b.  Provide adequate, cool drinking water on the worksite that is easily accessible and permit employees to take frequent rest and water breaks.
    c.  Use relief workers and reduce physical demands of the job.
    d.  Use work/rest schedules.

5.  **Health Screening and Acclimatization:**
    a.  Allow new workers to get used to hot working environments by using a staggered approach over 7-14 days.  For example, new workers should begin work with 20% of the normal workload and time spent in the hot environment, and then gradually increase the time over a 7–14-day period.  The same should be done for workers returning from an absence of three or more days, starting with 50% of the normal workload and time spent in the hot environment, then staging acclimatization over three consecutive days. Advise workers that certain medications can increase risk of heat stress. These include:
        1.  Amphetamines – sometimes prescribed for narcolepsy or attention deficit hyperactivity disorder (ADHD),
        2.  Diuretics - water pills,

   3. Antihypertensives - blood pressure medication,
   4. Anticholinergics - for treatment of chronic obstructive pulmonary disease (COPD), and
   5. Antihistamines - allergy medications

b. In addition, alert workers to the dangers of using illegal drugs and alcohol in hot work environments. Illegal amphetamines, such as methamphetamine, are particularly hazardous when heat stress is present.

c. Some conditions, such as pregnancy, fever, gastrointestinal illness, heart disease, and obesity, may increase the risk of heat-related illness. Advise workers to check with their doctors if they have any questions. (Please note: the employer is NOT entitled to know whether workers have these conditions, but only whether workers have any health conditions that limit their ability to perform their job duties. In some instances, workers with chronic conditions may need extra time to become acclimatized or may need other accommodations, such as more frequent breaks or restricted work.)

d. Encourage workers to consult a doctor or pharmacist if they have questions about whether they are at increased risk for heat-related illness because of health conditions they have and/or medications they take.


You may voluntarily provide this Area Office with progress reports on your efforts to address these heat-related conditions in your workplace. OSHA may return to your worksite to further examine the conditions noted above.


Sincerely,


[*AD name*]
Area Director

Additional Resources:

1. OSHA-NIOSH InfoSheet: Protecting Workers from Heat Illness, www.osha.gov/sites/default/files/publications/osha-niosh-heat-illness-infosheet.pdf.

2. CDC Workplace Safety and Health Topics: Heat Stress, www.cdc.gov/niosh/topics/heatstress.

3. NIOSH Criteria Document: Criteria for a Recommended Standard: Occupational Exposure to Heat and Hot Environments, February 2016, www.cdc.gov/niosh/docs/2016-106/.

4. American Conference of Governmental Industrial Hygienists (ACGIH®) Action Limit (AL) for un-acclimatized workers and a Threshold Limit Value (TLV®) for acclimatized workers, *see* Heat Stress and Strain: TLV® Physical Agents 2022 or latest edition. *See* ACGIH® website at www.acgih.org/.

5. NOAA/NWS Heat Safety webpage, www.weather.gov/safety/heat.

**Appendix E:  Sample Employer Letter to Corporate Offices for Heat-related Hazards**

Bracketed comments are for OSHA compliance use only and should be removed when appropriately completed with the case-specific information.  Please also check all links to ensure they are the most current.

RE: OSHA Inspection No. [ ]

Dear Employer:

On **[Date]**, the Occupational Safety and Health Administration (OSHA) conducted an inspection and evaluation of your worksite at **[Location]** for hazards related to potential exposure to heat-related hazards.

During the inspection, OSHA determined that hazards were found in violation of the OSHA standards, resulting in [a violation of section 5(a)(1) of the OSH Act or a Hazard Alert Letter] to **[Company]**.  A copy of the [citations and/or letter] is attached.

Based on the guidelines listed below, it is recommended that employers take the necessary precautions to materially reduce employees' exposure to heat-related hazards.

Because you have other establishments that could present similar hazards, the Occupational Safety and Health Administration is recommending that you conduct a hazard assessment for potential hazards in your other establishment(s).  To ensure that heat-related hazards are promptly identified and addressed at your other locations, please facilitate immediate corrective action where needed.  OSHA recommends that you also institute additional heat-illness measures and review the safety and health practices of your worksites to ensure consistency with OSHA recommendations and compliance with applicable OSHA standards, including:

- The Recordkeeping regulation at 29 CFR § 1904.7(b)(5) requires that employers record certain work-related injuries and illnesses.  If a worker requires medical treatment beyond first aid, the worker's illness or injury must be recorded.  However, if a worker merely requires first aid treatment for the worker's condition, the employer is not required to record the condition.  For example, if a worker becomes unconscious, the worker's condition must be recorded.  However, if a worker is only instructed to drink fluids for relief of heat stress, the worker's condition is not recordable.  Refer to 29 CFR § 1904.7(b)(5) for an explanation of the difference between medical treatment and first aid.  Recordkeeping issues must be handled in accordance with OSHA Instruction, CPL 02-00-135, available at: www.osha.gov/enforcement/directives/cpl-02-00-135.
- The Sanitation standards at 29 CFR § 1910.141, 29 CFR § 1915.88, 29 CFR § 1917.127, 29 CFR § 1918.95, 29 CFR §1926.51, and 29 CFR § 1928.110 require employers to provide potable water.
- The general construction safety training and education standard for construction at 29 CFR § 1926.21 and 29 CFR § 1926.20 requiring a Safety and Health Program, as well as frequent and regular safety and health inspections.

- ▪ Section 5(a)(1), General Duty Clause of the Occupational Safety and Health Act (OSH Act).

OSHA's website, www.osha.gov, offers a wide range of safety and health-related guidance in response to the needs of both employers and employees.

1. OSHA's Heat Illness Prevention Campaign, www.osha.gov/heat
2. OSHA Safety and Health Topics: Heat, www.osha.gov/heat-exposure

We strongly urge you to share this letter with all worksites within your corporation, as well as with representatives of any recognized employee union or safety committee that may exist at your facilities.

Please note that Section 11(c) of the OSH Act protects employees against retaliation or adverse action because of their involvement in protected safety and health related activity.

If you have questions regarding this issue, you may contact me at the address in the letterhead. I appreciate your personal support and interest in the safety and health of your employees.

Sincerely,


[AD name]
Area Director

Additional Resources:

1. OSHA-NIOSH InfoSheet:  Protecting Workers from Heat Illness, www.osha.gov/sites/default/files/publications/osha-niosh-heat-illness-infosheet.pdf.

2. CDC Workplace Safety and Health Topics: Heat Stress, www.cdc.gov/niosh/topics/heatstress.

3. NIOSH Criteria Document:  Criteria for a Recommended Standard: Occupational Exposure to Heat and Hot Environments, February 2016, www.cdc.gov/niosh/docs/2016-106/.

4. American Conference of Governmental Industrial Hygienists (ACGIH®) Action Limit (AL) for un-acclimatized workers and a Threshold Limit Value (TLV®) for acclimatized workers, *see* Heat Stress and Strain: TLV® Physical Agents 2022, or latest edition. *See* ACGIH® website at www.acgih.org/.

5. NOAA/NWS Heat Safety webpage, www.weather.gov/safety/heat.

**Appendix F:  Description of Serious Heat-related Illnesses and Common Symptoms**

The table below describes serious heat-related illnesses and common signs and symptoms. Please note that this list is not exhaustive.

| Heat-Related Illnesses* | Symptoms and Signs |
|---|---|
| Heat stroke | <ul><li>Confusion</li><li>Slurred speech</li><li>Unconsciousness</li><li>Seizures</li><li>Heavy sweating or hot, dry skin</li><li>Very high body temperature</li><li>Rapid heart rate</li></ul> |
| Heat exhaustion | <ul><li>Fatigue</li><li>Irritability</li><li>Thirst</li><li>Nausea or vomiting</li><li>Dizziness or lightheadedness</li><li>Heavy sweating</li><li>Elevated body temperature or fast heart rate</li></ul> |
| Heat cramps | <ul><li>Muscle spasms or pain</li><li>Usually in legs, arms, or trunk</li></ul> |
| Heat syncope | <ul><li>Fainting</li><li>Dizziness</li></ul> |
| Heat rash | <ul><li>Clusters of red bumps on skin</li><li>Often appears on neck, upper chest, and skin folds</li></ul> |
| Rhabdomyolysis (muscle breakdown) | <ul><li>Muscle pain</li><li>Dark urine or reduced urine output</li><li>Weakness</li></ul> |
| Acute kidney injury (AKI) | <ul><li>Kidneys become damaged due to inadequate blood flow or a second mechanism is rhabdomyolysis of kidney muscle tissue.</li><li>Diagnosed by elevated blood creatinine levels. Urine output is also reduced.</li><li>May lead to kidney failure</li></ul> |

\* Heat-related injury means an injury linked to heat exposure that is not considered one of the typical symptoms of heat-related illness (with the exception of kidney injury), such as a fall or cut.

Appendix F-1

**Appendix G:  Warnings, Alerts, and Advisories Issued by the National Weather Service**

The following types of warnings, alerts, and advisories may be issued by the U.S. National Oceanic and Atmospheric Administration (NOAA), National Weather Service (NWS) (*see* NWS webpage, here):

- **Heat Advisory—Take Action!**  A Heat Advisory is issued within 12 hours of the onset of extremely dangerous heat conditions.  The general rule of thumb for this Advisory is that the maximum heat index temperature is expected to be 100°F or higher for at least 2 days, and nighttime air temperatures will not drop below 75°F.

- **Heat Wave—Take Action!** A heat wave is forecast by NWS or a local news station.  A heat wave is when the daily maximum temperature exceeds 95°F or when the daily maximum temperature exceeds 90°F and is 9°F or more above the maximum reached on the preceding days.

- **Excessive Heat Warning—Take Action!**  An Excessive Heat Warning is issued within 12 hours of the onset of extremely dangerous heat conditions.  The general rule of thumb for this Warning is that the maximum heat index temperature is expected to be 105°F or higher for at least 2 days and nighttime air temperatures will not drop below 75°F.

- **Excessive Heat Watches—Be Prepared!**  Heat watches are issued when conditions are favorable for an excessive heat event in the next 24 to 72 hours.  A Watch is used when the risk of a heat wave has increased but its occurrence and timing is still uncertain.

- **Excessive Heat Outlooks—Be Prepared!**  Outlooks are issued when the potential exists for an excessive heat event in the next 3-7 days.  An Outlook provides information to those who need considerable lead-time to prepare for the event.

**Appendix H:  Additional Resources**

1. White House Fact Sheet - interagency effort and commitment to workplace safety, climate resilience, and environmental justice, September 20, 2021.

2. Federal Register, 86 FR 59309, 29 CFR § 1910, 1915, 1917, 1918, 1926, and 1928, *Heat Injury and Illness Prevention in Outdoor and Indoor Work Settings*; *Advance notice of proposed rulemaking (ANPRM)*, October 27, 2021.

**State Plans with Heat Standards**

3. California, Heat Illness Prevention webpage, here.

4. Minnesota, MNOSHA Compliance: Heat Stress webpage, here.

5. Washington, State Department of Labor & Industries: Be Heat Smart webpage, here.

**Outreach**

6. OSHA Memorandum, *Procedures for Local and Regional Emphasis Programs*, December 3, 2014.

7. OSHA Publication 3905, Whistleblower: Recommended Practices for Anti-Retaliation Program, 2017.

8. OSHA Webpage, Heat Illness Prevention Campaign.

9. OSHA Webpage, Safety and Health Topic Page: Heat (all webpages also available in Spanish).

10. OSHA Poster, Prevent Heat Illness at Work (English), (Spanish).

11. OSHA Webpage, COVID-19 Guidance: The Use of Cloth Face Coverings while Working Outdoors in Hot and Humid Conditions, September 2020.

12. OSHA Publications:  Heat Illness Prevention Fact Sheets, Wallet Cards, etc. (several also available in Spanish).

13. OSHA-NIOSH Info Sheet, OSHA 3438 – 2011, Protecting Workers from Heat Illness.

14. CDC, COVID-19 and Cooling Centers.

15. CDC, What Workers Need to Know about Heat Stress Prevention during the COVID-19 Pandemic.

16. U.S. Environmental Protection Agency, Climate Change and Social Vulnerability in the United States: A Focus on Six Impacts, EPA 430-R-21-003, September 2021.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:

Inspection of the workplace
located at and near:                                    Case No. 8:22MJ409

700 R Street
Lincoln, Nebraska 68501

under the control or custody of:

UNITED STATES POSTAL SERVICE

## ADMINISTRATIVE SEARCH WARRANT

TO:    Matthew Thurlby
       Area Director
       Occupational Safety and Health Administration
       Omaha Area Office

Application having been made, and reasonable cause having been shown for the inspection of the workplace described as United States Postal Service and located at 700 R Street, Lincoln, Nebraska 68501

IT IS HEREBY ORDERED that, pursuant to section 8(a) of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678, YOU OR YOUR DULY DESIGNATED REPRESENTATIVES ARE AUTHORIZED to enter the above-described workplace during regular working hours or at other reasonable times, to make an inspection and investigation of asbestos and heat-related hazards and any hazards in plain view.

The inspection will include relevant records, including the OSHA 300 Logs for three previous years, files, and papers, and any hazards observed in plain view. The inspection will be conducted during regular working hours or at other reasonable times,

within reasonable limits, and in a reasonable manner, including the questioning privately of any employee or agent, and the taking of photographs, videotape, environmental samples (including the use of personal sampling equipment), and measurements when necessary. The compliance officer's credentials will be presented, and the inspection will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness.

You are hereby directed not to disclose any information obtained during the inspection that is designated to be a trade secret, as defined by 18 U.S.C. § 1905, except that such information may be disclosed to other officers or employees concerned with carrying out the Act or when relevant in any proceeding under the Act.

A return shall be made to this Court showing that the inspection has been completed. The inspection authorized herein shall be initiated within ten (10) days, and a return shall be made to the Court within fourteen days following completion of the inspection.

DATED: __7/20/2022_____

_____
MICHAEL D. NELSON
United States Magistrate Judge

RETURN OF SERVICE

I hereby certify that a copy of the within warrant was duly served on the company named hereon on

_____

_____

_____

RETURN

Inspection of the establishment described in this warrant was made on

_____.

_____
Compliance Officer
Occupational Safety and Health Administration
United States Department of Labor